David A. HAEFELI,
Petitioner-Appellee,

v.

Paul CHERNOFF et al.,
Respondents-Appellants.

No. 75–1192.

United States Court of Appeals,
First Circuit.

Argued Sept. 10, 1975.

Decided Dec. 15, 1975.

Dennis J. LaCroix, Asst. Atty. Gen., Crim. Div., with whom Francis X. Bellotti, Atty. Gen., and John J. Irwin, Jr., Asst. Atty. Gen., Chief, Crim. Div., were on brief, for respondents-appellants.

William A. Nelson, Boston, Mass., for petitioner-appellee.

Before COFFIN, Chief Judge, McENTEE, Circuit Judge, and THOMSEN,* District Judge.

McENTEE, Circuit Judge.

This is an appeal by the Commonwealth of Massachusetts from a decision of the district court granting appellee's petition for a writ of habeas corpus

* Of the District of Maryland sitting by designation.

which challenged his state court conviction. In April 1970 petitioner-appellee was named in seven indictments, each charging him with knowingly receiving stolen property. He was tried in Suffolk County Superior Court, convicted by a jury on all charges, and was adjudged "a common receiver of stolen goods."[1] Mass.G.L. c. 266, § 62. His conviction was affirmed by the Massachusetts Supreme Judicial Court. *Commonwealth v. Haefeli,* 361 Mass. 271, 279 N.E.2d 915 (1972).

Appellee's habeas corpus petition was grounded on the claim that the state trial court improperly denied his pretrial motion to suppress evidence which was later introduced against him. Evidence from two separate searches is at issue in this case: a warrantless search of an automobile which petitioner had driven before his arrest, and a search conducted pursuant to a warrant of his apartment. The district court held that the evidence from these searches was illegally obtained and should have been suppressed. After a review of the record in this case we reverse.

The petitioner was arrested by Boston police officer Robert Hughes on January 12, 1970. There was evidence of the following events prior to the arrest. In November 1969, the apartment of one Mona Lacey on Commonwealth Avenue in Boston was robbed. Among the articles stolen from the apartment was a check-cashing courtesy card issued by the Star Market Company.[2] This robbery and numerous thefts from the United States mail were under investigation by officer Hughes. He was also investigating a series of offenses involving the passing of worthless checks. A number of such checks were cashed by a woman using the name of Mona Lacey at a Star Market which routinely photographed persons cashing checks there. Officer Hughes noted the same woman in approximately twenty different photographs and he circulated them, or reproductions of them, to business people in the general vicinity where the worthless checks were cashed.

Officer Hughes also had information that the petitioner, whom he had previously known, was involved in the passing of worthless checks. He received information from many informants (including one or more of the victims of the transactions involving worthless checks) that the woman who appeared in the photographs was accompanied by a male who fitted petitioner's general description; at the suppression hearing the judge found petitioner's haircut and mustache to present "definitely identifiable features."[3]

On January 12, 1970, a Boston real estate agent called officer Hughes and reported that a woman resembling the one in the circulated Star Market photograph had been in his office and was expected to return later that day. Officer Hughes and detective Sullivan took up a surveillance position outside the realtor's office. At about 5:45 that evening the two officers observed a car parked on Commonwealth Avenue approximately fifty feet from the office. Hughes recognized the driver as petitioner-appellee and his passenger as the woman in the Star Market photograph. The two got out of the car and went

---

1. Petitioner was sentenced, pursuant to Mass. G.L. c. 266, § 62, to a consolidated term of a minimum of three years and a maximum of seven years and was committed to the Massachusetts Correctional Institution (MCI), Walpole, on May 28, 1970. He was released on parole on February 16, 1971. Upon revocation of parole, he was returned to MCI, Walpole, on October 29, 1973; he was again released on December 17, 1973, and continues on parole. In his parole status he is still "in custody" within the meaning of 28 U.S.C. § 2241 pursuant to which he sought habeas corpus relief.

*Jones v. Cunningham,* 371 U.S. 236, 83 S.Ct. 373, 9 L.Ed.2d 285 (1963).

2. In addition there were checks with Mona Lacey's name printed on them, an out-of-state driver's license, and six or seven credit or identification cards.

3. Officer Hughes' investigation also disclosed that petitioner and the woman in question were using an automobile which had not been reported stolen, but which was registered to a Mr. Kaler.

into the realtor's office. Hughes went inside after them and questioned the woman as to whether she was Mona Lacey. She looked "[s]omewhat startled," said she was not, and gave him an assumed name. Petitioner-appellee also gave an assumed name. Neither assumed name matched that of the registered owner of the automobile, although the woman claimed it was her car.[4] Hughes arrested the pair.

Following the arrest, Hughes went out to the car "to find who the owner of the car was." With a flashlight he looked through a closed window and saw an envelope on the floor with checks sticking out approximately one inch. He could not see anyone's name on the checks. He then opened the car door, took out the checks and observed the name "Joseph Shain" printed on them. These checks form the basis of one of the seven indictments on which petitioner was convicted. Hughes also opened the glove compartment looking for the registration[5] and found a Star Market check-cashing courtesy card issued to Mona Lacey. The two officers then seized the automobile and brought it to the station. No warrant was obtained, nor was permission given to search the car.

After the arrest of the pair Hughes went to an address given him by petitioner. This proved to be a rooming house and the proprietor informed him that petitioner and the female arrestee lived in room 3 on the first floor. Detective Sullivan then secured a search warrant for the room from the Roxbury District Court. The warrant was executed later that same evening.

■ First, we examine the automobile search which yielded evidence that formed the basis for one of the seven indictments on which petitioner was convicted.[6] The Commonwealth contends that a warrantless search was proper under these circumstances because within the so-called "automobile exception" as set forth in *Carroll v. United States,* 267 U.S. 132, 45 S.Ct. 280, 69 L.Ed. 543 (1925) and modified by *Chambers v. Maroney,* 399 U.S. 42, 90 S.Ct. 1975, 26 L.Ed.2d 419 (1970). We agree. *Carroll* established the proposition that an automobile may be stopped and searched on the open highway without a warrant, where there is some "exigency" or likely danger that the evidence would otherwise be lost. In *Chambers,* which incorporated the exigency requirement, the Court held that "[f]or constitutional purposes, we see no difference between on the one hand seizing and holding a car before presenting the probable cause issue to a magistrate and on the other hand carrying out an immediate search without a warrant. Given probable cause to search, either course is reasonable under the Fourth Amendment." 399 U.S. at 52, 90 S.Ct. at 1981. In the case before us, as petitioner-appellee concedes, probable cause to search the car was clearly present. The pair were suspected of forging and uttering stolen and worthless checks, and officer Hughes had seen checks protruding from an envelope on the floor of their automobile; at the time of the arrest they had given names one of which was known by

---

4. Although Hughes was not aware of the fact at the time of the arrest, the woman was the daughter of the owner of the automobile and was using the car with her father's permission.

5. The Supreme Judicial Court, in upholding the validity of the search of the car, held that Hughes had a valid reason to intrude into the car "for the limited purpose of investigating ownership." *Commonwealth v. Haefeli, supra* 279 N.E.2d at 921. However, we do not uphold the search on that basis. *See* discussion *infra.*

6. The Commonwealth contends that when officer Hughes saw the checks protruding from the envelope on the floor of the car they were in "plain view" and could be seized without a warrant. *Harris v. United States,* 390 U.S. 234, 88 S.Ct. 992, 19 L.Ed.2d 1067 (1968). While we are inclined to think the plain view doctrine is inapplicable to this case, *see Coolidge v. New Hampshire,* 403 U.S. 443, 465–68, 91 S.Ct. 2022, 29 L.Ed.2d 564 (1971), we need not reach the question in view of our holding on the automobile exception aspect.

the police to be false and both of which were known not to correspond to the car's registration.

The critical question then is whether there were sufficiently exigent circumstances confronting the police to justify a warrantless search. In determining what constitutes exigent circumstances the Supreme Court has examined a variety of factors. *Cardwell v. Lewis,* 417 U.S. 583, 94 S.Ct. 2464, 41 L.Ed.2d 325 (1974) represents the Court's most recent analysis of the issue of exigent circumstances. In that case, after the police arrested the defendant they impounded his car from a nearby public, commercial parking lot, and thereafter made a warrantless examination of the exterior. The Court, in a plurality opinion, distinguished *Coolidge v. New Hampshire,* 403 U.S. 443, 91 S.Ct. 2022, 29 L.Ed.2d 564 (1971) on the ground that there the police had entered on the defendant's private property and seized the car which was parked in his driveway, and applied *Chambers v. Maroney, supra,* to uphold the validity of the warrantless seizure, *Cardwell v. Lewis, supra* 417 U.S. at 593, 94 S.Ct. 2464.[7]

In the present case the district court, overturning the judgment of the Supreme Judicial Court, held there were no exigent circumstances.[8] However, when the factors relied on by the district court are examined in light of *Cardwell* it is clear the district court's determination was improper. One factor relied on by the district court was that the defendants' car was not stopped while moving on a highway, but was parked on a street. But a similar situation obtained in *Cardwell* where the car was parked in a public lot, and the Court held that exigent circumstances were present. "Here, as in *Chambers v. Maroney,* . . . the automobile was seized from a public place where access was not meaningfully restricted." *Cardwell v. Lewis, supra* 417 U.S. at 593, 94 S.Ct. at 2471.

■ The other critical factor for the district court in its finding of no exigent circumstances was that since both suspects were arrested and officer Hughes' prior investigation had not indicated any confederates who might approach the car, there was no necessity to move it immediately nor any indication the evi-

---

**7.** While *Cardwell* ruled that the police action was not a search within the meaning of the fourth amendment, 417 U.S. at 588–92, 94 S.Ct. 2464, its discussion of the application of the automobile exception in general, and of *Chambers v. Maroney* in particular, drew no distinctions between searches and seizures in this context.

**8.** In finding no "exigent circumstances" the district court emphasized the fact, indicated in the transcript of the suppression hearing, that Hughes was not alone at the scene of the arrest, but was accompanied by detective Sullivan who could have assisted in obtaining a warrant. The district court noted that neither the Superior Court's findings after the suppression hearing nor the opinion of the Supreme Judicial Court mentioned a second police officer. Consequently, the district court obtained a stipulation from the parties that the arrest and search were carried out by more than one officer. The court also stayed the federal proceedings in order to give the Supreme Judicial Court an opportunity to reconsider its earlier decision. The parties thereafter filed a joint request for a rehearing in the Supreme Judicial Court which was denied.

While we are satisfied that the record indicates two officers were present, this does not affect our holding that in light of *Cardwell v. Lewis, supra,* the situation in this case involved "exigent circumstances."

In denying the request for a rehearing, the Supreme Judicial Court suggested petitioner could seek discretionary relief at the trial court level pursuant to Mass.G.L. c. 278, § 29. On the basis of this suggestion the Commonwealth contends that petitioner has not exhausted his state remedies pursuant to 28 U.S.C. § 2254. The district court properly rejected this claim.

Evidence of the second officer's presence was available and was not withheld by petitioner in the state court proceeding. As the Eighth Circuit has recently held: "[a]bsent a willful withholding of evidence by the defendant in the state proceeding, the requirement of exhaustion does not preclude the District Court from entertaining the issue previously raised in state court and deciding the habeas claim upon the basis of new evidence." *Austin v. Swenson,* 522 F.2d 168 at 170 (8th Cir. 1975); *see Townsend v. Sain,* 372 U.S. 293, 83 S.Ct. 745, 9 L.Ed.2d 770 (1963).

**1318**

dence inside would be lost while a warrant was sought. However, the *Cardwell* Court eliminated this factor as a bar to a finding of exigent circumstances. The police in that case had the keys and the parking lot ticket, and the evidence they were seeking was not something that a confederate could have removed from the car, but paint on the fender and tracks from the tire, both of which could have been removed, if the defendant had had a mind to, during the several months between the time he was first questioned about the murder and the time of his arrest. In short, it was extraordinarily unlikely that the evidence would be lost while a warrant was obtained, even more so than in *Chambers,* where, as the *Cardwell* Court noted, "all occupants of the car were in custody and there were no means of relating this fact or the location of the car . . . to a friend or confederate," *Cardwell v. Lewis, supra,* at 595, 94 S.Ct. at 2472; nevertheless the Court held there were exigent circumstances. *Id.* Thus it is clear that the present case like *Cardwell* falls within the ambit of *Chambers v. Maroney* and that exigent circumstances were present.[9] Accordingly, we hold that the warrantless search of the car was not improper, and the evidence derived therefrom was properly admitted at trial.

█ The second issue presented by this case is the validity of the search of petitioner's apartment pursuant to a warrant obtained by detective Sullivan. The articles seized in this search form the basis of the remaining six indictments on which petitioner was convicted. The district court held that since the automobile search was improper, the "warrant therefore was the fruit of an illegal search." Since we uphold the validity of the car search, the district court's analysis is inapposite. The affidavit accompanying the warrant presented ample information on which a magistrate could find probable cause to believe that stolen property was being concealed at petitioner's apartment.[10]

█ Petitioner claims that the averment in the affidavit that the "subjects"

**9.** The recent per curiam reversal in *Texas v. White,* —— U.S. ——, 96 S.Ct. 304, 46 L.Ed.2d 209, in which the Court below had emphasized the absence of exigent circumstances but the Court found it unnecessary to even discuss the issue, further supports our conclusion.

**10.**　　　　　"January 12, 1970

I, William H. Sullivan, being duly sworn, depose and say:

1. I am a detective, Boston Police Department, District 14
2. I have information based upon photographs of a female subject whom I arrested this date for Receiving Stolen Property and also for Forging & Uttering stolen checks and also a male subject whom I arrested in her company for Receiving Stolen Property. I have probable cause to believe, as a result of evidence found on these subjects (in their possession) at the time of their arrest, that these two subjects have been involved in the larcenies of mail (U.S.) on this District. These subjects (David Haefeli, 21 years, 901 Beacon Street, Boston and Janice Kaler, 19 years of 901 Beacon St., Boston) had identification in the name of one Mona Lacey, 1152 Commonwealth Ave., Allston—whose apartment had been burglarized on Nov. 24, 1969; checks and identification were reportedly stolen in this break.
3. Based upon the foregoing reliable information—and upon my personal knowledge and belief—and attached affidavits—there is probable cause to believe that the property hereinafter described—has been stolen—or is being concealed, etc. and may be found in the possession of David A. Haefeli and Janice Kaler at premises 901 Beacon St., Boston.
4. The property for which I seek the issuance of a search warrant is the following: Stolen mail, checks and identification, such as driver's licenses, credit cards, charge plates.

WHEREFORE, I respectively request that the court issue a warrant and order of seizure, authorizing the search of Room # 3, on the first floor of a 3 story brick rooming house numbered 901 Beacon St., Boston and directing that if such property or evidence or any part thereof be found that it be seized and brought before the court; together with such other and further relief that the court may deem proper.

　　　　　WILLIAM H. SULLIVAN
　　　　　Signature of Applicant"

were arrested on January 12 for receiving stolen property, forgery, and larceny, is only an assertion that the police "assumed they had probable cause and acted on their assumption." Petitioner further objects that the assertion that the suspects lived at 901 Beacon Street in room # 3 fails to attribute a source. However, these claims cannot avail. An affidavit must be interpreted in a common-sense and not a hypertechnical manner. *United States v. Ventresca,* 380 U.S. 102, 109, 85 S.Ct. 741, 13 L.Ed.2d 684 (1965). Further, a magistrate is entitled to draw reasonable inferences from the facts contained in the affidavit based on his experience in such matters. *Irby v. United States,* 114 U.S.App.D.C. 246, 314 F.2d 251, 253 (D.C.Cir.), *cert. denied,* 374 U.S. 842, 83 S.Ct. 1900, 10 L.Ed.2d 1064 (1963). On the basis of information in the affidavit it was reasonable to infer that when the officer arrested the suspects, he learned the address at which they lived, if he did not know it previously. It was also reasonable to infer, from their possession of Mona Lacey's identification material, that they had either stolen it themselves from the Lacey apartment or had received it from the thief knowing it to have been stolen, and that in either event the other articles stolen from the apartment might be found where they lived. Accordingly, we hold that the affidavit here was sufficient to justify the grant of the search warrant for petitioner's apartment, and the evidence obtained therefrom was properly admitted at trial.

*The decision of the district court granting appellee's petition for habeas corpus is reversed.*