**UNITED STATES of America, Plaintiff,**

v.

**Kevin L. KESSINGER, Defendant.**

**Crim. No. 80–258–C.**

United States District Court, D. Massachusetts.

Dec. 18, 1980.

Judd Carhart, John LaChance, Asst. U. S. Attys., Boston, Mass., for plaintiff.

Jack Zalkind, Boston, Mass., for defendant.

## OPINION, ORDER, AND FINDING

CAFFREY, Chief Judge.

On July 24, 1980 a two count indictment was returned charging Kevin L. Kessinger with violation of 21 U.S.C. § 841(a)(1), possessing cocaine, a Schedule II controlled substance, with intent to distribute. Count I charged an offense on May 27, 1980. Count II charged a violation on May 27 and May 28. After entry of a not guilty plea, defendant moved to suppress evidence seized on May 27 near midnight and in the early post-midnight hours on May 28. The seizures were made during a search of defendant's apartment on May 27 and during the search on May 28 of defendant's Jaguar. Defendant also seeks suppression of certain statements made to the officers at the time of his arrest.

A hearing was held on the motion to suppress at which defendant called as his only witness Agent James P. Sullivan of the Drug Enforcement Administration, U.S. Department of Justice. At the conclusion of the testimony of Agent Sullivan, the hearing on the motion was suspended after the Court told counsel of its reaction to Sullivan's testimony. Thereafter counsel conferred, and on October 20, 1980 the government and defendant both moved for waiver of a jury trial. The government moved to dismiss Count I, and both parties filed a stipulation on the basis of which they both moved the Court to consider as all the evidence in a non-jury trial on Count II and both sides then rested, content to have Count II decided on the basis of the stipulation and the documents and statements incorporated therein.

With regard to the motions to suppress, I find and rule as follows:

At the September 8, 1980 hearing on the motion to suppress, Special Agent James Sullivan of the DEA testified to the following facts. I accept this testimony as true.

On May 18, 1980 Agent Sullivan was contacted by Detective Maurice Fuco, of the Walpole Police Department, who stated that a reliable informant told him (Fuco) that on May 17, 1980, he (the informant) had observed Kevin Kessinger in possession of several ounces of white powder which Kessinger said was high quality cocaine. The informant described Kessinger as a white male in his early twenties, who was a dealer in foreign cars who owned a red Jaguar, a gray BMW, a white BMW, and a red Caprice parked in front of his apartment. The informant told Detective Fuco that the May 17 incident occurred in Kessinger's apartment. He gave Fuco the address, and described the location in the building of Kessinger's apartment.

On May 22, 1980, Agent Sullivan verified the defendant's address through Windsor Garden Apartments Rental Office records, and also observed there three of the cars described above. Through the Massachusetts Registry of Motor Vehicles he traced the Jaguar registration to Kessinger and confirmed Kessinger's age. A criminal record check indicated that the defendant was arrested by Massachusetts State Police in 1978 for possession of a Class B controlled substance with intent to distribute.

On May 26, 1980 Detective Fuco contacted Agent Sullivan again, and told him that within the past 24 hours the informant again had observed Kessinger in his Windsor Garden apartment in possession of a multi-ounce quantity of cocaine. On May 27 Special Agent Keefe advised Agent Sullivan that a reliable informant notified him on May 23 that Keefe's informant had seen a quantity of what Kessinger described as high quality cocaine at Kessinger's Windsor Gardens apartment between May 20 and May 23. Also on May 27, Agent Sullivan consulted with Massachusetts State Trooper Donald Cuccinelli, who had conducted periodic surveillance of the Windsor Apartments parking lot from May 10 to May 27. Cuccinelli told Agent Sullivan that he had observed that the red Jaguar XKE was moved during that period, while the gray BMW was not.

Based on all the above information, Agent Sullivan on May 27, 1980 applied for warrants to search the BMW automobile and the defendant's apartment. The application was based on affidavits stating the facts above and Sullivan's opinion that Kessinger was using his apartment for distribution and the BMW for storage of cocaine. The magistrate issued the warrants, erroneously inserting his own name in the space provided for the name of the person authorized to execute the warrant.

Shortly before execution of the warrants, Detective Fuco notified Agent Sullivan that Fuco's informant had just reported that Kessinger would leave his apartment in Norwood at 7:45 p. m. in the red Jaguar to pick up some cocaine from a location on the North Shore and then bring it back to the apartment. The informant said he learned this from a conversation which he overheard earlier on May 27 between Kessinger and a prospective customer.

Accompanied by State Trooper Cuccinelli, Special Agents Robert Allen, Francis Dever and Patricia Mead of the DEA, Detective William Casey of the Norwood Police Department, and Assistant District Attorney Gerald Podolsky, Agent Sullivan undertook surveillance of the defendant. The agents observed defendant meet with another individual, identified later as William Boyle, and enter the red Jaguar at the Windsor Garden Apartments. The officers followed the car as Boyle drove north on Route 1–A to Boston, and then continued on to Revere in the area of the Northgate Shopping Center. Several unmarked cars were used by the members of the surveillance group. I find all members kept each other informed by use of two-way radios during the surveillance. Agent Sullivan observed that the two suspects repeatedly looked behind them, and the car was driven erratically, at speeds varying from 15 to 70 miles per hour with frequent lane changes. The suspects stopped at a McDonald's parking lot on Route 1 in Revere, and both entered the restaurant, followed by Trooper Cuccinelli who was in civilian clothes. The suspects exited after a short time, defendant Kes-

singer returned to the Jaguar and left Boyle standing alone in the rear parking lot of McDonald's. Two of the surveilling vehicles followed the Jaguar driven by Kessinger to the intersection of Rumney Road and Patriot's Pond Parkway, where Kessinger was observed parking and exiting the Jaguar. He then was temporarily lost from view. At this time, since it was approximately 9:00 p. m. and the search warrants expired at 10:00 p. m., Agent Sullivan by two-way radio ordered Trooper Cuccinelli and Agent Dever to return to secure the premises at Apartment no. 208 in Windsor Gardens, Norwood.

When Kessinger returned to the Jaguar after a few minutes, he was seen opening the door on the passenger side and leaning into the car in the area of the glove compartment. He then closed the door and opened the trunk of the vehicle and leaned in. After closing the trunk, he drove back to McDonald's, parked and walked around to the passenger side while Boyle returned to the driver's seat. Boyle drove back to Norwood noticeably more slowly and cautiously than previously, according to the officers who were still following. Upon arrival at the parking lot of the Windsor Garden Apartments at approximately 10:30 p. m. Agents Sullivan, Mead, Allen and Cuccinelli arrested Kessinger and Boyle. The defendant was patted down for weapons. He was then informed of his *Miranda* rights and told that his apartment and the BMW automobile would be searched. Agent Sullivan asked for consent to search the Jaguar, saying he intended to impound it for a search. Kessinger denied consent, saying that if the agents had him under surveillance they should know that the only drugs he had were in the Jaguar. Upon his request, Kessinger was brought into his apartment to observe the search. Kessinger initiated conversations with Agent Sullivan in which he stated that he wanted to cooperate and that he wanted to speak with his attorney because he knew that they would find drugs and that he was in trouble. Agent Sullivan and Trooper Cuccinelli advised him to speak with an attorney.

Sullivan ordered other agents to remove the Jaguar to a secure garage under the J.F.K. Federal Building. It was taken there, locked, but not searched. On May 28, 1980 Sullivan and Trooper Cuccinelli searched the vehicle pursuant to a search warrant obtained that day on the basis of Sullivan's affidavit detailing the above-described facts. The search yielded a packet of white powder, found wrapped in a black T-shirt in a rimless spare tire in the trunk of the Jaguar. Upon analysis, the substance proved to be 111.71 grams of cocaine. A small quantity of cocaine was also found in the search of the apartment. No evidence was found in the search of the BMW automobile.

### The Apartment Search

Defendant challenges the validity of the search of his apartment on the grounds that there was insufficient information to create probable cause to issue a search warrant and that the search warrant was defective for failure to name the person authorized to conduct the search. I find that the affidavit submitted by Agent Sullivan contained sufficient credible information to support probable cause to search defendant's apartment.

Probable cause exists where "the facts and circumstances within (the law enforcement agent's) knowledge and of which they had reasonably trustworthy information (are) sufficient in themselves to warrant a man of reasonable belief that . . . a crime has been or is being committed and that seizable property can be found at the place or on the person to be searched." *Carroll v. United States*, 267 U.S. 132, 162, 45 S.Ct. 280, 288, 69 L.Ed. 543 (1925). In this case the affidavit was based on hearsay information derived from an informant, so it must meet the requirements established in *Aguilar v. Texas*, 378 U.S. 108, 84 S.Ct. 1509, 12 L.Ed.2d 723 (1964): the record must disclose some of the underlying circumstances which provided the basis for the informant's specific allegations and from which the officer concluded the informant was credible and his information reliable. *Id.* at 114, 84 S.Ct. at 1513; *Saville v.*

*O'Brien*, 420 F.2d 347, 349 (1st Cir. 1969), *cert. denied* 398 U.S. 938, 90 S.Ct. 1840, 26 L.Ed.2d 270. The first prong of the test is satisfied since the informant told Detective Fuco that he personally observed the defendant at his apartment in possession of a substance Kessinger claimed to be cocaine, and the information was of a sufficiently detailed nature so as to assure that it was based on more than mere rumor and speculation. *United States v. Sclamo*, 578 F.2d 888, 890 (1st Cir. 1978). The informant came by his information from his own personal observation, distinguishing this case from cases where the source did not state how he received his information. *Von Utter v. Tulloch*, 426 F.2d 1 (1st Cir. 1970), cert. denied, 400 U.S. 826, 91 S.Ct. 50, 27 L.Ed.2d 55 (1970), *Saville v. O'Brien, supra* at 349. Agent Sullivan's affidavit also satisfies the second prong of the *Aguilar* test. Although he conceded that he did not have personal experience with the informant, he testified that he knew the informant was reliable and credible and had supplied information leading to arrests within the previous six months. Where the affidavit does not indicate that the agent had a basis in experience for having confidence in the informant the Court must look to the facts and circumstances upon which the informant based his tip, and the corroboration undertaken by the agent. *United States v. Dauphines*, 538 F.2d 1 (1st Cir. 1976). Agent Sullivan corroborated the detailed information of the informant on several points, including Kessinger's age, the fact he was a white male, his residence in apartment 208 Windsor Garden, ownership of the Jaguar, and the presence outside his apartment of two other cars attributed to Kessinger by the informant. He also discovered that Kessinger's criminal record disclosed prior arrests for possession of cocaine. Reading the affidavit in a realistic and commonsense manner, *United States v. Ventresca*, 380 U.S. 102, 85 S.Ct. 741, 13 L.Ed.2d 684 (1965); *United States v. Cruz Pagan*, 537 F.2d 554 (1st Cir. 1976), I find that the magistrate properly found probable cause to support the search warrant.

Although the affidavit suffices to establish probable cause defendant contends the warrant was invalid in its execution because it failed to identify the party authorized to conduct the search. In *United States v. Gannon*, Judge Wyzanski ruled that a study of history indicates that all the warrant "*must* do is state why the property is seized, what it is, and where it is." 201 F.Supp. 68, 73 (D.Mass.1961). He explained:

> The sole reason why the 'messenger' is often named in the search warrant and the sole reason why Rule 41(c) of the Rules of Criminal Procedure provides that 'the warrant shall be directed to a civil officer of the United States authorized to enforce or assist in enforcing any law thereof or to a person so authorized by the President of the United States', is . . . (so) the Court can validly punish him if he does not execute his duty as he is bound to do.

Naming the person to execute the warrant also enables the magistrate to make a pre-search determination that an appropriate officer will serve the warrant, assists the person whose premises are searched in insuring that the one searching is not an imposter, and creates a record for the sake of judicial determinations of the validity of the search. *United States v. Soriano*, 482 F.2d 469 (5th Cir. 1973). These interests do not elevate the rule to a constitutional requirement; nor did the failure to name the executing agents impair the protected interests of the defendant in this case. Agent Sullivan, whose name appears on the warrant as the affiant and who filed a return with the magistrate upon execution of the warrant, was the agent in charge of the investigation. He ordered the search, which was conducted on the same day the warrant was issued by a federal DEA agent and a state trooper. No one was in the apartment when the search was commenced. When the defendant arrived at the apartment building he was immediately informed that the search was in progress and allowed to observe. "Violations of Rule 41 alone should not lead to exclusion unless (1) there was 'prejudice' in

the sense that the search might not have occurred or would not have been so abrasive if the Rule had been followed, or (2) there is evidence of intentional and deliberate disregard of a provision in the Rule." *United States v. Miller*, 442 F.Supp. 742, 757 (S.D. Maine, 1977) citing *United States v. Burke*, 517 F.2d 377, 386–87 (2d Cir. 1975). I rule that there was no prejudice to defendant caused by the magistrate's erroneous insertion of his own name and I also find the error was neither intentional nor done in deliberate disregard of Rule 41.

### The Arrest and Post-Arrest Statements

■ Defendant alleges that the warrantless arrest was invalid and that his post-arrest statements are inadmissible on the grounds that the arrest was not supported by probable cause. In a warrantless arrest, the burden is on the government to prove that the arresting officer had probable cause to arrest the defendant. The analysis is "basically similar" to the analysis of whether a search warrant should issue. *Spinelli v. United States*, 393 U.S. 410, 417 n. 5, 89 S.Ct. 584, 589 n. 5, 21 L.Ed.2d 633 (1969).

■ Therefore, the above analysis of the circumstances supporting the finding of probable cause to search the defendant's apartment applies to the arrest as well. "Although *Aguilar* involved the sufficiency of an affidavit submitted in support of a search warrant application, its test is equally applicable to a determination, made on the basis of testimony at a suppression hearing, as to the lawfulness of a warrantless arrest." *United States v. Vargas*, No. 79–1604, 633 F.2d 891, at 897 n. 13 (1st Cir. 1980). Since the government does not rely solely on the affidavit to establish probable cause, it is not necessary to determine whether the affidavit standing alone was sufficient to justify the arrest. Rather, the government views the informant's tips as relevant factors which, in conjunction with independent surveillance, provided grounds for the arrest. "The inquiry thus becomes whether all the information provided to the DEA agents, sufficed to establish probable cause to arrest." *Id.*, at 898.

■ I find sufficient probable cause to arrest in the information supplied to Detective Fuco and Agent Keefe by informants, and relayed to Agent Sullivan by Keefe and Fuco as supplemented by the May 27, 1980 surveillance of the suspicious activity of defendant. Agent Sullivan's affidavits for search warrants contained information that a reliable and credible informant related from personal observations. A second reliable and credible informant provided similar information based on his personal observations to Agent Keefe of the DEA. The first informant reported to Detective Fuco on May 27, 1980 that Kessinger would be leaving in his Jaguar at 7:45 p. m. that evening to pick up cocaine on the north shore, based on a conversation the informant personally overheard between Kessinger and a prospective buyer. This information was corroborated by surveillance of the defendant's activities; his departure at 7:45 in the Jaguar and the erratic manner in which the car was driven to the north shore; the leaving of his companion alone in the back of the McDonald's parking lot while he drove to and parked at an intersection and temporarily left the car; his actions upon reappearance, leaning into the passenger seat and then the trunk of the car as if to hide something; the return trip, driven in a completely different fashion, as if taking great pains to avoid attracting attention. During the ride back, the Jaguar was driven at a constant speed of about 40 miles per hour, generally remaining in the right lane and stopping twice to let all other cars go by. Agent Sullivan testified that during one such stop he passed the defendant's car and observed the driver carefully scrutinizing all passing cars. As the First Circuit Court of Appeals noted in the *Vargas* case, such maneuvers are susceptible to innocent interpretation; even the erratic driving may be attributable to the manner of driving which is notorious in this state. At 897 n. 13. I find that the law enforcement officers were justified in discounting possible innocent interpretations of the defendant's behavior under the

totality of the circumstances known to them.

I base this finding on the cumulative effects of the agents' observations, combined with the prior information provided from first-hand observations of reliable, credible informants reported to the federal agents by state and federal law enforcement officers cooperating in the ongoing investigation. The circumstances were sufficient to warrant the belief of a reasonable person that a crime had been or was being committed. Probable cause may be equated with reasonable grounds for belief, since reasonableness is the overriding test of compliance with the Fourth Amendment. *United States v. Melvin*, 596 F.2d 492, 495 (1st Cir. 1979). In determining probable cause, in view of the degree of communication among various federal and state agents in this case, it is appropriate to examine their collective knowledge, and take into account their experience as law enforcement officers, since "[c]onduct innocent in the eye of the untrained may carry entirely different 'messages' to the experienced or trained observer." *United States v. Clark*, 559 F.2d 420, 424 (5th Cir. 1977).

Defendant contends that statements made to agents of the DEA after his arrest are not admissible. Immediately after the arrest, Trooper Cuccinelli advised defendant of his *Miranda* rights, in the presence of Agent Sullivan. Subsequently defendant initiated conversations in which he made damaging statements to Agent Sullivan, who advised him that he should speak to an attorney. Since the arrest was valid, these statements cannot be held involuntary as the fruits of an unlawful arrest. Compare *Wong Sun v. United States*, 371 U.S. 471, 83 S.Ct. 407, 9 L.Ed.2d 441 (1963). There is no evidence that the statements were compelled by physical or psychological coercion; to the contrary, defendant sought out the opportunity to speak with Agent Sullivan after being given the *Miranda* warnings, and he expressed his understanding of his rights. Accordingly, the motion to suppress statements made by the defendant after his arrest should be, and hereby is, denied.

### The Search of the Jaguar Automobile

When defendant refused to give him consent to search the Jaguar automobile in which he had been riding prior to his arrest, Agent Sullivan ordered the car impounded. Agents Mead and Allen drove the car to the basement of the garage in the J.F.K. Federal Building, where it was locked and left overnight. On May 28, 1980, Agent Sullivan obtained a search warrant and searched the automobile with Trooper Cuccinelli. Defendant asserts that there was no authority for impounding the vehicle, and that the affidavit supporting the search warrant did not constitute probable cause to search the vehicle. The government contends that the seizure was based on probable cause to believe the vehicle contained controlled substances on the basis of the agents' observations and the prior information from the informants, pursuant to the Drug Forfeiture Statute. 21 U.S.C. § 881(b)(4).

I find that the information provided by the informants, in conjunction with the observations of the law enforcement officers during their surveillance of the defendant, establishes probable cause to search the Jaguar. It may well have been lawful for the agents to search the vehicle at the time of arrest without a warrant under the "automobile exception" to the warrant requirement or in light of the totality of the exigent circumstances present; certainly the same considerations justified impounding the car until a magistrate was available to issue a warrant. The government should not be penalized for taking extra steps in the effort to assure protection of defendant's rights under the Fourth Amendment by obtaining a warrant. Given the lesser expectation of privacy, *Cardwell v. Lewis*, 417 U.S. 583, 94 S.Ct. 2464, 41 L.Ed.2d 325 (1974) and the mobility inherent in the automobile, *Carroll v. United States*, 267 U.S. 132, 45 S.Ct. 280, 69 L.Ed. 543 (1925); and in light of the probability that the car contained evidence which could be removed or destroyed, *Haefeli v. Chernoff*, 526 F.2d 1314 (1st Cir. 1975), I find

that it was lawful for the agents to take reasonable precautions to secure the vehicle. I find further that it was reasonable in the totality of the circumstances for Agent Sullivan to decide that the automobile was best secured by removing it from the parking lot outside of defendant's apartment to the J.F.K. Building, he having determined that there was insufficient manpower available to guard the vehicle all night at the apartment parking lot.

Accordingly, I rule that the motions to suppress should be, and they hereby are, denied.

### The Motions for Waiver of Jury Trial, Dismissal of Count I, and Non-Jury Trial of Count II

██ Defendant has moved to waive his right to jury trial in this case. As long as the waiver of his right to a jury trial is expressly and intelligently given by a defendant *Patton v. United States*, 281 U.S. 276, 50 S.Ct. 253, 74 L.Ed. 854 (1930), and assented to by the prosecution and the court, *Singer v. United States*, 380 U.S. 24, 85 S.Ct. 783, 13 L.Ed.2d 630 (1965); Rule 23(a) Fed.R.Crim.P., there is no miscarriage of justice in allowing such a motion. The motion to waive jury trial should be, and hereby is, allowed.

The government has moved to dismiss Count I of the indictment and has accepted a stipulation of facts agreed to by defendant. Since Count I and Count II essentially reiterate the same allegations, the government motion should be, and hereby is, allowed.

The stipulation incorporates and elaborates on the testimony of Agent Sullivan at the September 8, 1980 suppression hearing. The motion for a non-jury trial on the basis of the stipulation and the testimony adduced at the suppression hearing filed by both parties should be, and hereby is, allowed.

### Finding

On the basis of the record before me, I find that the government has sustained its burden of proving that the arrest of defendant and the search of his apartment and automobile were legal and the government has sustained its burden of proving that the motions to suppress should be denied.

I find on all the evidence that the government has proven beyond a reasonable doubt that on May 27 and May 28, 1980 defendant knowingly and intentionally possessed at Norwood, Massachusetts a quantity of cocaine with intent to distribute same.