**COMMONWEALTH**
**vs.**
**Michael MASSA, Jr.**

**Nos. 031104-031106**

Superior Court/Suffolk County
Commonwealth of Massachusetts

**June 2, 1982**

561

Michaiel Gaffney, Asst. D.A., Suffolk, counsel for plaintiff.
Al Farese, counsel for defendant.

### FINDINGS, RULINGS AND ORDER ON THE DEFENDANT MASSA'S MOTION TO SUPPRESS EVIDENCE ILLEGALLY SEIZED AND FOR RETURN OF PROPERTY

#### Introduction

The defendant Massa is charged in three indictments with unlawful possession of cocaine with intent to distribute it, with four counts of violations of General Laws, Chapter 269, Section 10H, which involve three instances of alleged unlawful possession of firearms and one instance of unlawful possession of ammunition, and with receiving stolen property exceeding the value of $100.

#### Findings of Facts.

After a hearing on the defendant's motion, from the evidence by way of testimony, exhibits and inferences therefrom, I find the facts relevant and material to the relief sought by the defendant in his motion as follows. On April 21, 1980 Police Officer John Marotta of the Winthrop Police Department, a police officer since 1970, learned of a fire in progress at the so-called Fort Heath Apartments which is a large apartment complex situated on Pond Street in Winthrop, Massachusetts. On arriving at the scene of the fire, Officer Marotta performed traffic control duties and assisted in leading senior citizens from the apartment complex. While performing those duties, a Firefighter Russell of the Winthrop Fire Department spoke with Officer Marotta in the vestibule of the apartment complex and turned over to him a 9MM Smith and Wesson pistol with ammunition in its magazine. Firefighter Russell informed Officer Marotta that he had found that pistol in plain view in Apartment 8I at the apartment complex. The fire had begun in Apartment 8I and other than substantial smoke and other damage, the fire damage was confined to the immediate area of Apartment 8I. Officer Marotta then proceeded to Apartment 8I where he remained outside securing it from spectators. At about that time Officer Marotta learned that the defendant Massa was the occupant of the Apartment 8I and had been transported to the Winthrop Community Hospital approximately one-half hour or so earlier in order to be treated for injuries which he, Massa, had suffered in the fire.

When Officer Marotta had been standing outside of Apartment 8I for a few moments, a Fire Lieutenant Burdett called him into the apartment and pointed to the inside of a tool box which was open and showed to him what was a 25 cal. stainless steel pistol and which was in plain view. Also in the tool box as pointed out to Officer Marotta by Fire Lieutenant Burdett was a scale and a clear plastic container containing a white powder. Nearby to the tool box was a glass table with a strainer, a very large quantity of cigarette papers and a glass container with a black top with a white powdery substance in it. A few moments later, while Officer Marotta was again standing outside of Apartment 8I, an unidentified firefighter with a mask on who was apparently from another community handed to Officer Marotta a 45 cal. pistol. That firefighter indicated to Officer Marotta that he had found the pistol in one of the rooms of Apartment 8I. Upon telephone inquiry, Marotta learned shortly thereafter, that Massa had neither a gun-carrying license nor an F.I.D. Card for any of the pistols. Officer

Marotta then secured the pistols.

Officer Marotta then prepared an affidavit which is Exhibit #1 and obtained a warrant which is Exhibit #2. He then searched Apartment 8I pursuant to the warrant and he made a return on the reverse side of Exhibit #2. In the course of that search, Officer seized, among other things, the white powdery substance in the two containers referred-to above which turned out to be cocaine. Officer Marotta never notified Massa before he seized the pistols.

**Rulings of Law.**

The seizure of the three pistols was accomplished without a warrant and, therefore, the Commonwealth has the burden to establish that the seizure was legal. **Commonwealth v. Young,** Mass. Adv. Sh. (1980) 280, 288. In these cases, the Commonwealth has met its burden by showing that in all three instances exigent circumstances existed which justified each seizure. **Michigan v. Tyler,** 436 U.S. 499, 509 (1978); **United States v. Chadwick,** 433 U.S. 1, 12 (1977); **United States v. Edwards,** 602 F.2d 458, 468 (1979).

The firefighters referred-to above are government officials within the meaning of the Fourth Amendment and their initial seizures of the pistols implicate constitutional protections. **Michigan v. Tyler, supra** at 504, 506. Although a warrantless search of a dwelling is **per se** unreasonable, it may be justified if exigent circumstances exist. **Michigan v. Tyler, supra** at 509; **United States v. Chadwick, supra** at 12; **United States v. Edwards, supra** at 468. In **Michigan v. Tyler, supra** at 509, the Court stated that, "A burning building clearly presents an exigency of sufficient proportions to render a warrantless entry 'reasonable.' " Although the issue before the **Tyler** Court was different than the one presented in these cases, the Court's discussion of exigent circumstances is instructive. In allowing seizure of arson evidence that was in plain view the Court stressed the need for safety given the emergency confronting the firefighters. **Id.** Implicit in this recognition of the need for safety in

justifying the seizure is a balancing of the fire victim's protectible expectation of privacy with a legitimate governmental interest. **Id.** at 506-509. This balancing test for determining the unreasonableness of government intrusions into legitimate expectations of privacy has received widespread application in cases involving warrantless searches and seizures where exigent circumstances are alleged to have existed. **United States v. Chadwick, supra** at 7-12; **United States v. Viegas,** 639 F.2d 42, 44-45 (1st Cir. 1980), cert. denied, 101 S.Ct. 2046 (1980). The fundamental inquiry is whether or not the seizure was reasonable under all the circumstances. **United States v. Chadwick, supra** at 9.

In these cases the defendant Massa had a decreased expectation of privacy in his apartment. The Commonwealth has a strong interest in protecting the public from fires in apartment house dwellings. The defendant could reasonably expect that government officials, **i.e.,** firefighters, and police if necessary, may be required to enter his burning apartment to protect life and property. Pursuant to this justified and limited intrusion into defendant's apartment, Firefighter Russell found a firearm, and in accordance with his efforts to make the area safe, he turned it over to Office Marotta. Concerned for safety, and relying upon his years of experience as a police officer, Marotta checked the gun to see if it was loaded. He found live ammunition in its magazine. At this point, with the firearm legally in his possession for safekeeping, Officer Marotta was able to determine that it was unlicensed and that defendant had no F.I.D. card for it.

Shortly thereafter, Lieutenant Burdett told Officer Marotta that another firearm had been seen in an open box in the same apartment. The officer, with a heightened concern for safety, having just acquired a loaded and unlicensed firearm from that apartment, followed the fireman into Apartment 8I.[1] The officer's intrusion into the apartment was limited to the exigency of the circumstances. See, **Commonwealth v. Young,** Mass. Adv. Sh. (1980) 280, 291. He merely went to the open box, observed the pistol, removed it and left the apartment. The officer's limited and brief entry was wholly consistent with his stated purpose, **i.e.** to remove a potentially dangerous instrument from a burning apartment. The officer diligently attempted to limit his intrusion of the fire victim's protectible privacy interest. It would have been imprudent for the firefighter or officer to allow a potentially loaded firearm to remain lying about in a burning apartment especially considering that the occupant was unavailable. The reasonableness of the officer's response must be "evaluated in relation to the scene as it could appear to the officers at the time," **Commonwealth v. Young,** Mass. Adv. Sh. (1981) 280, 288, given his experience and expertise. **United States v. Viegas, supra** at 45. Given the governmental safety interest involved and the limited intrusion of the defendant's privacy expectations, the officer's entry into the apartment and seizure of the pistol were not unreasonable. For the same reasons, seizure of the third firearm, the 45. cal. pistol, was also reasonable. Therefore, seizure of the pistols did not violate defendant's Fourth Amendment rights under the United States Constitution as applied to the states through the Fourteenth Amendment. **United States v. Chadwick, supra** at 7-9.

The remaining evidence was seized pursuant to a search warrant. (Exhibit No. 2). The defendant therefore has the burden to establish that the evidence was illegally obtained. **Commonwealth v. Antobenedetto,** 366 Mass. 51, 56-57 (1974). The defendant has not met his burden.

The defendant claims that there existed no probable cause for issuing the search warrant and that the warrant lacks particularity. This Court will confine itself to the facts presented in the affidavit in determining whether probable cause existed. **United States v. Klein,** 565 F.2d 183, 186 n.4 (1st Cir. 1977). This Court must interpret the affidavit "in a common-sense and not a hypertechnical manner." **Haefeli v. Chernoff,** 526 F.2d 1314, 1319 (1st Cir. 1975). The magistrate is entitled to draw reasonable inferences from the facts. **Id.** The affidavit reveals the existence of unlicensed, possibly illegally possessed, firearms in the apartment as well as several items of possible contraband and drug paraphernalia. The affidavit presents ample information to have warranted a search of the defendant's premises for firearms, ammunition, controlled substances and the other items described in the search warrant. Therefore, probable cause did exist for issuing the search warrant. **Commonwealth v. Cefalo, supra** at 1886; **Commonwealth v. Brown,** 354 Mass. 337, 345 (1968).

---

1. It is noteworthy that only upon learning of a second firearm, lying in an open box in a burning apartment, did the officer decide to enter the apartment. Until that point, the officer remained outside the apartment, neither seeking nor directing anyone to search or seize firearms in the apartment. The officer remained outside to maintain order and safety. His concern for public safety still motivated his actions, but given the possibility of a second loaded firearm lying about in the burning apartment, the officer wisely went inside. Upon seeing the firearm the officer immediately took the prudent action of seizing it. His actions and the situation as it presented itself to him belie any inference that he went inside the apartment with the primary purpose of conducting a search for illegal firearms. **Cf. Commonwealth v. Benoit,** Mass. Adv. Sh. (1981) 26, 35.

Furthermore, the information provided in the affidavit was based on observations made during a legal search and seizure. See, **Haefeli v. Chernoff, supra.** As noted above, the pistols were legally seized. In the course of seizing the pistols Officer Marotta inadvertently observed, in plain view, the items he listed in the affidavit. The officer must have believed these items to be contraband and drug paraphernalia. **Commonwealth v. Accapunto,** Mass. Adv. Sh. (1980) 1009, 1020-1021.[2] Finally, this Court also concludes that the search warrant was sufficiently particularized. **Commonwealth v. Cefalo, supra** at 1885.

**Order.**

For the reasons enunciated above, the Commonwealth's seizure of the defendant's property did not violate his rights, and it is **ORDERED** that defendant's Motion to Suppress Evidence be **DENIED.**

**Paul G. Garrity**
**Justice of the Superior Court**

---

2. Arguably, at the time the officer saw these items he could have legally seized them under the "plain view" exception to warrantless searches and seizures. **Commonwealth v. Cefalo,** Mass. Adv. Sh. (1980) 1009, 1020-1021. The officer, however, acting in a consistently diligent and prudent manner, sought to obtain a search warrant. "The government should not be penalized for the extra steps in its efforts to assure Fourth Amendment protection by obtaining a warrant." **United States v. Kersinger,** 504 F.Supp. 494, 501 (D.C. Mass. 1980).

Moreover, the Sergeant's and Officer Marotta's walk through the apartment before they left to obtain a search warrant was for the legitimate purpose of determining the extent of fire damage. Cf. **Commonwealth v. Benoit,** Mass. Adv. Sh. (1981) 26, 35.