Commonwealth vs. Geraldo Rivera Ortiz.

Suffolk. May 2, 1978. — September 12, 1978.

Present: Hennessey, C.J., Quirico, Braucher, Liacos, & Abrams, JJ.

*Constitutional Law*, Search and seizure. *Search and Seizure.*

A police officer's use of binoculars to observe the defendant's actions
on a public street did not intrude on the defendant's reasonable
expectation of privacy, and information gained from such observa-
tions could form the basis for probable cause to search the defend-
ant's automobile. [351–353]

Evidence that police officers on patrol in an area of heavy drug traffic
observed the defendant showing his brother, who had prior drug
arrests, a yellow packet of the kind known to the officers as being
used for packaging heroin and that the defendant retreated into a
public park after throwing the yellow packet into his automobile
when the officers approached him was sufficient to support a find-
ing of probable cause to search the automobile. [353–355]

Where police officers observed the defendant throw a packet of heroin
into his automobile parked on a public street and retreat into a
public park on their approach, where they could not have obtained
a search warrant prior to their observation of the defendant's ac-
tivities, and where there was a possibility that the defendant or
someone else could move the car or the contraband, exigent circum-
stances justified the warrantless search and seizure under both the
State and Federal Constitutions. [355–358]

INDICTMENT found and returned in the Superior Court
on July 18, 1975.

A motion to suppress evidence was heard by *Adams*, J.
Applications for interlocutory appeals were allowed in
the Supreme Judicial Court for the county of Suffolk by
*Wilkins*, J., and the appeals were reported by him.

*Brian J. Dobie*, Special Assistant District Attorney, for
the Commonwealth.

*Gary A. Blau* for the defendant.

LIACOS, J. The defendant, having been indicted for possession of heroin with intent to distribute, filed a pretrial motion to suppress evidence seized as a result of a warrantless search of an automobile. After hearing, a judge of the Superior Court allowed the defendant's motion in part and denied it in part. Both the Commonwealth and the defendant applied for a claim of appeal under G. L. c. 278, § 28E. A single justice of this court granted the interlocutory appeals, consolidated them, and reported the case, without decision, to the full court.

The facts, taken from the motion judge's order and memorandum, are as follows. At 7:30 P.M. on May 16, 1975,[1] four police detectives, including a Detective Logan, were on patrol in an unmarked vehicle near Blackstone Park in Boston, an area known by the detectives for its heavy drug traffic. At 7:45 P.M. the defendant, driving a Ford Thunderbird automobile, parked adjacent to Blackstone Park. From a distance of 114 feet, and with the aid of high-powered (7 × 50) binoculars, Logan observed the defendant being approached by his brother, Felix. On two prior occasions, Logan had arrested Felix on charges of conspiracy to violate the drug laws. As the defendant's brother neared, the defendant left the automobile to show him a yellow packet, which appeared to be a "dime bag" of heroin. At that time, "dime bags" of heroin distributed in the Spanish-speaking community often consisted of blue, red, yellow, brown or orange writing paper. While the defendant showed the yellow packet to his brother, the detective operating the surveillance vehicle started up. The tires screeched as a result of the quick acceleration, thereby alerting the defendant and his brother to the detectives' presence. The defendant immediately threw the yellow packet into the Thunderbird, closed the

---

[1] The discrepancy between the judge's finding (May 17, 1975) and the transcript of the suppression hearing as to the date the incident occurred (May 16, 1975) is not material to the arguments raised in this case.

door, and together with his brother retreated into Blackstone Park.

The surveillance vehicle stopped alongside the Thunderbird, and Logan opened the door of the Thunderbird to retrieve the yellow packet. He then told Detective Spellman to grab the defendant. The defendant was apprehended and handcuffed, but the police "could not apprehend Felix." Spellman then entered the Thunderbird and observed on the front seat an eight-track tape deck from which protruded a yellow tissue paper similar in color, but not texture, to the "dime bag" previously recovered. He seized the tape and the tissue whose contents were subsequently found to contain a so called "Chinese marble" consisting of brown heroin.

The Superior Court judge denied the motion to suppress with respect to the "dime bag" or yellow packet, but allowed that part of the motion urging the suppression of the "Chinese marble." We conclude that the judge should have denied the defendant's entire motion to suppress.

1. *Did the Use of Binoculars Constitute a Search?*

By use of binoculars, the police detective's initial observations of the defendant's activities led to the information establishing probable cause for the seizure of the contraband. The defendant urges the suppression of the fruits of this surveillance on the ground that before artificial viewing aids may be used to make such observations, a warrant should be obtained, or at least a reasonable cause standard should be constitutionally required. We hold that the Fourth Amendment to the United States Constitution makes no such demand in these circumstances.

In *Katz* v. *United States,* 389 U.S. 347 (1967), the Supreme Court considered a person's expectations of privacy to be of importance in determining the constitutionality of a search. Although *Katz* held that "the Fourth Amendment protects people, not places," the place involved may be relevant in deciding whether the person has a reasonable expectation of privacy. *Id.* at 360-361

(Harlan, J., concurring). The observations in this case which took place from a public street while the defendant engaged in apparently illicit activity by the entrance to a public park could not, in our opinion, intrude on the defendant's reasonable expectation of privacy. Other courts, when determining the legality of binocular observations in similar circumstances have reached this same result. See *United States* v. *Minton,* 488 F.2d 37, 38 (4th Cir. 1973), cert. denied, 416 U.S. 936 (1974); *United States* v. *Grimes,* 426 F.2d 706 (5th Cir. 1970); *Fullbright* v. *United States,* 392 F.2d 432, 434-435 (10th Cir.), cert. denied, 393 U.S. 830 (1968);[2] *Patterson* v. *State,* 133 Ga. App. 742 (1975), aff'd, 138 Ga. App. 290 (1976), and 238 Ga. 204 (1977); *Commonwealth* v. *Hernley,* 216 Pa. Super. 177 (1970), cert. denied, 401 U.S. 914 (1971). Further support for this conclusion can be found in *United States* v. *Lee,* 274 U.S. 559 (1927), which upheld a warrantless searchlight scan of a boat deck at open sea. In this pre-*Katz* case, Mr. Justice Brandeis remarked in dictum that "[s]uch use of a searchlight is comparable to the use of a marine glass or a field glass." *Id.* at 563. See *Commonwealth* v. *Cavanaugh,* 366 Mass. 277, 281 (1974) (flashlight observation of interior of car on public street constitutionally permissible). Accord, *Commonwealth* v. *Haefeli,* 361 Mass. 271, 280 (1972), habeas corpus granted sub nom. *Haefeli* v. *Chernoff,* 394 F. Supp. 1079 (D. Mass.), rev'd, 526 F.2d 1314 (1st Cir. 1975). Compare *United States* v. *Emery,* 541 F.2d 887 (1st Cir. 1976) (electronic beeper placed in package containing contraband drugs was not a search under the Fourth Amendment), with *United States* v. *Kenaan,* 496 F.2d 181, 182-183 (1st Cir. 1974) (use of ultraviolet light to detect presence of powder on defendant's hands was an infringement of rights protected by Fourth Amendment).

---

[2] This case places emphasis on the open fields doctrine of *Hester* v. *United States,* 265 U.S. 57 (1924), rather than on the expectation of privacy rationale of *Katz.* Under either theory, the binocular surveillance of the defendant here did not constitute an illegal search.

The defendant has cited only one case wherein the use of binoculars to view the defendant's activities was held to violate the defendant's Fourth Amendment rights. *United States* v. *Kim,* 415 F. Supp. 1252 (D. Haw. 1976). In that case the court found unconstitutional the use by police of artificial viewing aids to observe activities within the individual's home. However, the court upheld the employment of such devices to observe the defendant on a shared walkway, concluding that the defendant had no legitimate expectation of privacy in this area outside his home. *Id.* at 1258. Similarly, this binocular observation of the defendant on a public street is not an intrusion which must satisfy the "search" requirements of the Fourth Amendment. See, generally, Liacos, Criminal Law, 32 J. Am. Trial Lawyers Ass'n 518, 530-533 (1968). Thus, the information gained from these observations could form the basis for probable cause.

2. *Probable Cause.*

Although the police observations of the defendant's activities on a public street did not constitute a search, the entry by the police into his automobile to seize the "dime bag" clearly was that kind of intrusion which constitutes a search and seizure. As such, it cannot be viewed as reasonable absent probable cause and a warrant or exigent circumstances justifying the lack of a warrant. The Commonwealth bears the burden of showing the existence of both probable cause to believe the car contained contraband and exigent circumstances to justify the seizure without a search warrant. See *Commonwealth* v. *Antobenedetto,* 366 Mass. 51, 57 (1974).

The defendant contends that even armed with the information derived from the binocular search, the police possessed insufficient grounds for probable cause to believe the yellow packet, which the defendant threw into the car, contained drugs. We believe the evidence supports the finding that the police had probable cause to seize this "dime bag." The detectives observed the defendant retreat into the park after throwing into the car a

yellow packet when the detectives approached him. From their prior experience the detectives knew that they were in an area of heavy drug traffic, that the yellow packet was of the kind used for packaging heroin, and that the defendant's brother had prior drug arrests. In light of these facts the police had the requisite "belief, reasonably arising out of circumstances known to the seizing officer, that an automobile or other vehicle contains that which by law is subject to seizure." *Carroll* v. *United States*, 267 U.S. 132, 149 (1925).

The facts of this case are clearly distinguishable from the cases the defendant relies on where the search was held not to be based on probable cause. See *Commonwealth* v. *Almeida*, 373 Mass. 266 (1977); *Commonwealth* v. *Silva*, 366 Mass. 402, 403-404 (1974). The defendant criticizes the judge's consideration of such factors as the high crime rate in the area, the brother's prior drug arrests, and the retreat from the officer's approach.[3] These factors standing alone would provide an inadequate basis for probable cause. However, taken together and coupled with the defendant's actions in regard to the yellow packet, they afford sufficient grounds for a finding of probable cause. See *Commonwealth* v. *Battle*, 365 Mass. 472, 476 (1974); *Commonwealth* v. *Avery*, 365 Mass. 59 (1974). Evidence establishing probable cause need not be evidence which would be admissible on the issue of guilt at the defendant's trial. *Brinegar* v. *United States*, 338 U.S. 160, 174 (1949).

As to the "Chinese marble," after finding the "dime bag" of heroin on the seat of the car, the police observed

---

[3] The defendant contends that in view of the fact that the police vehicle was unmarked, his "walking into the park" could not be fairly characterized as "fleeing" from the police. Alternatively, he claims that if this were indeed flight it would be justified in light of Detective Logan's alleged prior harassment of the defendant. However, the explanation for the defendant's retreat into the park is irrelevant here; the police officer's reasonable interpretation of the events is what gives rise to probable cause.

the yellow tissue protruding from the tape deck. The judge found that these facts gave the officers probable cause "to think that under the circumstances further controlled substances were hidden behind it." We agree. Nor does it appear from the defendant's brief that he seriously contests this aspect of the judge's finding.

3. *Exigent Circumstances.*

The critical question here is whether, as matter of law, the situation presented by the record entails exigent circumstances that justify a search and seizure without securing prior judicial approval.

The judge found, and we agree, that exigent circumstances did exist when the police officer seized the "dime bag." In particular, the judge relied on the fact that the defendant, then still at large, knew that the police had been observing his activities. See *Carroll* v. *United States, supra; United States* v. *Farnkoff*, 535 F.2d 661, 666 (1st Cir. 1976). In response to this finding, the defendant contends that since he could have been arrested prior to the seizure of the "dime bag," no exigency would have existed to justify the warrantless search of the car.[4] Even assuming grounds for an arrest did exist at that particular time and that the defendant could have been captured without difficulty, where independent grounds for a search exist we would not require the police to apprehend the defendant before seizing the packet. The police actions here seem the lesser intrusion.

Contrary to the judge's ruling as to the latter seizure, we feel exigent circumstances existed to justify the seizure of the "Chinese marble" as well. The following fac-

---

[4] To the extent that the defendant argues that at the time of the seizure of the "dime bag" he was already apprehended and handcuffed, this is unsupported by the evidence and the judge's findings. In any event even if the defendant had been arrested first, the police still were confronted with exigent circumstances making it impracticable to obtain a search warrant. As noted *infra*, the defendant's brother or others in the vicinity could have easily moved the car and its contents from the public area where it was parked.

tors existing both at the time of the seizure of the "dime bag" and the "Chinese marble" created such an exigency: the police could not have obtained a warrant before observing the defendant's activities that evening; the car was parked on a public street;[5] and there was the possibility that the defendant's brother or others in the neighborhood, including other relatives of the defendant, could move the car or the contraband[6] in the officer's absence. See *Commonwealth* v. *Avery, supra* at 64-65. In view of these facts, it does not appear unreasonable for the police to seize without a warrant the two items on the car's front seat. See *Commonwealth* v. *Haefeli, supra* at 281. Cf. *Coolidge* v. *New Hampshire*, 403 U.S. 443 (1971) (no exigent circumstances where police enter private property and search parked vehicle, not then being used for any illegal purpose, nor likely to move while under guard of two officers).

Despite the presence of these factors the judge suppressed the "Chinese marble" on the grounds that "[e]xi-

[5] We are not persuaded by the defendant's argument that legal significance should attach to the fact that the car was parked rather than stopped while moving on the highway as in *Chambers* v. *Maroney*, 399 U.S. 42 (1970). The key question is whether, given the circumstances, the vehicle is potentially movable. In *Cardwell* v. *Lewis*, 417 U.S. 583, 594 (1974), the plurality opinion, relying on *Chambers*, upheld a warrantless seizure of an unoccupied automobile which was parked in a public lot. Cf. *Coolidge* v. *New Hampshire*, 403 U.S. 443 (1971) (plurality opinion).

[6] The reasonableness of this search must also be judged in light of the items seized—contraband goods. Until *Warden* v. *Hayden*, 387 U.S. 294 (1967), removed the bar against searches for "mere evidence," the automobile search cases following *Carroll* involved the seizure of contraband. See, e.g., *Scher* v. *United States*, 305 U.S. 251 (1938); *Husty* v. *United States*, 282 U.S. 694 (1931). While the police now are not limited to seizing only goods which are unlawful to have in one's possession, the fact that contraband alone was seized may be significant. A similar point was recently made by the Supreme Court in *Zurcher* v. *Stanford Daily*, 436 U.S. 547, 564 (1978), quoting from *Roaden* v. *Kentucky*, 413 U.S. 496, 501 (1973): "A seizure reasonable as to one type of material in one setting may be unreasonable in a different setting or with respect to another kind of material."

gent circumstances no longer existed because the defendant was under arrest; the keys of the automobile had been taken from the defendant and were in the hands of the detectives; and they were in the position to either retain the vehicle where located or remove it to the district police station, keeping it under guard until such time as a search warrant could be obtained."

Notwithstanding the inconsistencies in the case law on automobile searches, it is well established that postarrest exigent circumstances need not be so narrowly defined.[7] The fact that, in the abstract, less intrusive means might have been used does not, by itself, render the search unreasonable. *Cady* v. *Dombrowski*, 413 U.S. 433, 447 (1973). While the feasibility of posting guard has mitigated the exigency of the moment where a search of a dwelling was involved (*Commonwealth* v. *Hall*, 366 Mass. 790, 803 [1975]), the exigency requirement generally has not been as rigorously applied to cars.[8] For example, in *Chambers*

---

[7] While automobile searches are not exempted per se from the protection of the warrant requirement, such searches have been treated as a separate class. As was said in *Chambers* v. *Maroney*, 399 U.S. 42, 52 (1970), "for the purposes of the Fourth Amendment there is a constitutional difference between houses and cars." In *Carroll* v. *United States*, 267 U.S. 132 (1925), the Supreme Court first carved out the automobile exception to the general law of search and seizure. *Carroll* held that a vehicle on the highway may be stopped and searched without a warrant, provided the police have probable cause to believe that the vehicle contains contraband. The Court based this exception on the inherent mobility of vehicles which may create exigent circumstances rendering a warrant impracticable. *Id.* at 153. Later cases have emphasized the diminished expectation of privacy as an underlying factor in the *Carroll-Chambers* line of decisions. See *United States* v. *Chadwick*, 433 U.S. 1, 12 (1977); *United States* v. *Martinez-Fuerte*, 428 U.S. 543, 561 (1976); *Cardwell* v. *Lewis*, 417 U.S. 583, 590 (1974) (plurality opinion).

[8] As an alternative theory to justify the seizure of the "Chinese marble," the Commonwealth contends that the plain view doctrine is applicable. This doctrine "requires prior police justifications for an intrusion in the course of which an officer inadvertently comes across incriminating evidence." *Commonwealth* v. *Walker*, 370 Mass. 548, 557, cert. denied, 429 U.S. 943 (1976). See *Coolidge* v. *New Hampshire*, 403 U.S. 443, 466 (1971). Without deciding this issue, we note that the

v. *Maroney, supra,* the Supreme Court upheld an automobile search conducted at the police station hours after the driver's arrest. No suggestion was made that the police first had to explore the alternative of posting guards. See also *Texas* v. *White,* 423 U.S. 67 (1975); *Cardwell* v. *Lewis,* 417 U.S. 583 (1974).

Finally, the defendant argues that even if the search and seizure here is lawful under the Federal Constitution, it should be invalidated under the Massachusetts Declaration of Rights. While our State Constitution[9] may afford greater protections to a person in certain circumstances than those required by Federal decisions interpreting the Fourth Amendment,[10] we hold that the police activities here were consistent with both the State and Federal constitutional prohibitions against unreasonable search and seizures. Accordingly, the order granting the defendant's motion to suppress the "Chinese marble" was erroneous, while the denial of the motion to suppress the "dime bag" was correct. The case is remanded to the Superior Court Department for further proceedings consistent with this opinion.

*So ordered.*

---

trial judge determined that the "Chinese marble" was not in plain view since its incriminating nature was not apparent until the police had removed the yellow tissue and inspected the contents.

[9] Article 14 of the Declaration of Rights provides: "Every subject has a right to be secure from all unreasonable searches, and seizures, of his person, his houses, his papers, and all his possessions. All warrants, therefore, are contrary to this right, if the cause or foundation of them be not previously supported by oath or affirmation; and if the order in the warrant to a civil officer, to make search in suspected places, or to arrest one or more suspected persons, or to seize their property, be not accompanied with a special designation of the persons or objects of search, arrest, or seizure: and no warrant ought to be issued but in cases, and with the formalities prescribed by the laws."

[10] Other States have reached such a conclusion. See, e.g., *People* v. *Brisendine,* 13 Cal. 3d 528 (1975); *State* v. *Opperman,*      S.D. (1976) (247 N.W.2d 673 [1976]).