COMMONWEALTH vs. RONALD PODGURSKI
(and three companion cases[1]).

Norfolk.   February 3, 1982. — June 2, 1982.

Present: HENNESSEY, C.J., WILKINS, LIACOS, ABRAMS, & O'CONNOR, JJ.

*Search and Seizure*, Automobile, Expectation of privacy, Standing to
object. *Constitutional Law*, Search and seizure.

Defendants in a criminal case had a legitimate expectation of privacy in
the windowless rear interior of a cargo van, parked with its sliding
door ajar in a lot to which the public had access, so that a police of-
ficer's initial observation of illegal activity, which occurred only after
he walked up to the van and "stuck [his] head inside," and his subse-
quent seizure of contraband, constituted a search and seizure within
the scope of the Fourth Amendment. [387-389]
A police officer's action in entering the windowless rear interior of a
parked cargo van was not, in the circumstances, supported by prob-
able cause; nor did it meet the constitutional standard for a threshold
inquiry. [390]
Lack of property interest in a cargo van which had been subjected to a
police officer's unlawful search did not deprive a passenger in the van
of standing to object to the search, where his situation was identical to
that of the owner of the van. [390-392]

INDICTMENTS found and returned in the Superior Court
Department on September 29, 1980.

A pretrial motion to suppress evidence was heard by
*Dwyer*, J.

An application for an interlocutory appeal was allowed
by *Liacos*, J., in the Supreme Judicial Court for the county
of Suffolk, and transferred by him to the Appeals Court.

The Supreme Judicial Court ordered direct review on its
own initiative.

[1] One is against Ronald Podgurski; two are against Edward J. Collins,
III.

*Peter M. McElroy*, Assistant District Attorney (*Charles J. Hely*, Assistant District Attorney, with him) for the Commonwealth.

*Richard C. Driscoll*, Jr., for Edward J. Collins, III.

*Edward G. Butler* for Ronald Podgurski.

LIACOS, J. We are asked to determine, in this interlocutory appeal by the Commonwealth, whether the windowless rear interior of a cargo van, parked in a lot accessible to the public, is an area whose occupants may entertain a legitimate expectation of privacy. The judge ruled that an intrusion into such an area, made without probable cause and without either a warrant or exigent circumstances, was violative of both the Fourth Amendment to the United States Constitution and art. 14 of the Declaration of Rights of the Massachusetts Constitution. We affirm the motion judge's order suppressing the evidence. Our narrative draws liberally on the judge's undisputed findings, with only minor supplementation from the record.

On the afternoon of September 22, 1980, the manager of a clothing store in Canton telephoned the police in that town with a report of certain "suspicious activity" in a blue van parked in the lot at the rear of the store.[2] The officer who took the call dispatched one Officer James Brown to the scene. Brown testified he was told to check "[t]wo men inside a van acting suspicious." Brown proceeded to the parking lot and observed the van.[3] He approached the van from the side. When he was within ten feet of it, he determined that the sliding cargo door on the passenger side was open approximately fifteen to eighteen inches, and that two people were in the rear of the van. From this vantage point he did not observe either contraband or criminal activity.

---

[2] The officer who took the call testified that the manager said the two men were "cutting up something they shouldn't have been cutting." The judge did not accept this version of the citizen's call.

[3] The judge made no findings on the point, but it appears from the record that the vehicle was a cargo-type van with windows in the driver and passenger doors, in addition to the front windshield.

Nevertheless he walked up to the van and, in his words, "stuck [his] head inside." Once partially inside the van, he observed the defendants, both of whom he knew. Both men were apparently engaged in cutting and bagging portions of a brown substance, later shown to be hashish, contained in a clear plastic sandwich bag. Officer Brown seized this bag. At that point another officer arrived, and the two men were ordered from the van owned by the defendant Collins. The officers then reentered the van and seized other drugs and paraphernalia. The defendants were charged with possession, with intent to distribute, of a class C controlled substance (G. L. c. 94C, § 31), and with conspiracy to violate G. L. c. 94C, § 32.

Our initial task is to characterize properly Officer Brown's entry of the van. In arguing that the judge applied an erroneous legal standard by requiring probable cause to search, the Commonwealth urges on us the proposition that Officer Brown's entry was not a search but rather a "lawful threshold inquiry."[4] See *Adams* v. *Williams*, 407 U.S. 143 (1972); *Terry* v. *Ohio*, 392 U.S. 1 (1968). Cf. G. L. c. 41, § 98; *Commonwealth* v. *Bacon*, 381 Mass. 642, 643 (1980). Before reaching this issue, we must first determine whether the conduct of Officer Brown constituted a search in the Fourth Amendment sense. This question is answered in part by determining whether the police actions constituted an intrusion into an area where the defendants had a "legitimate expectation of privacy in the particular circumstances." *Sullivan* v. *District Court of Hampshire*, 384 Mass. 736, 741 (1981), and cases cited.[5] Unless such an

---

[4] The record before us does not reveal whether this contention was made to the motion judge. The defendants, however, make no claim that the Commonwealth has waived this point.

[5] The expectation-of-privacy inquiry as to whether a search has occurred is preliminary to a determination whether applicable probable cause and warrant requirements have been followed. See *Commonwealth* v. *Ortiz*, 376 Mass. 349, 353 (1978); *Rawlings* v. *Kentucky*, 448 U.S. 98, 111-113 (1980) (Blackmun, J., concurring). The expectation-of-privacy analysis utilized with respect to the validity of a defendant's claim

interest has been invaded unlawfully by the police, no Fourth Amendment violation can be claimed. *Id.*

We must determine whether the defendants' expectation of privacy in the interior of a windowless van, parked with its sliding door ajar in broad daylight and in a lot to which the public has access, is one which society could recognize as reasonable. See *Rakas v. Illinois*, 439 U.S. 128, 143-144 n.12 (1978); *Katz v. United States*, 389 U.S. 347, 361 (1967) (Harlan, J., concurring). The judge ruled this expectation to be reasonable, and we agree. In reaching this conclusion we are aware just how precisely the case turns on the manner in which the officer first observed the illegal activity. If the officer had been able to observe the illegal activity in the van by standing in the parking lot, or at some other vantage point where he was legally entitled to be, and either looking through the two side windows or the windshield, or peering through the partially open door, this initial observation would not have intruded on any expectation of privacy which the defendants could reasonably have had in the circumstances. Such an initial observation, made without physical intrusion into the vehicle, would have been lawful and could provide probable cause for the issuance of a warrant or, in exigent circumstances, for a warrantless seizure. See *Commonwealth v. Ortiz*, 376 Mass. 349, 351-353 (1978); *Commonwealth v. Baldwin*, 11 Mass. App. Ct. 386, 390-391 (1981); 1 W.R. LaFave, Search and Seizure § 2.2, at 242-243 (1978).

Here, however, the officer did not discover the illegal activity until *after* his warrantless intrusion into the interior of the van. We are aware that a motor vehicle is generally afforded a lesser degree of Fourth Amendment protection than is other property. See *United States v. Chadwick*, 433 U.S. 1, 12 (1977); *United States v. Martinez-Fuerte*, 428

is also the mode through which the United States Supreme Court has chosen to analyze a defendant's "standing" to raise the Fourth Amendment claim. *Rawlings v. Kentucky, supra* at 106. See also *United States v. Salvucci*, 448 U.S. 83 (1980); *Rakas v. Illinois*, 439 U.S. 128 (1978). See note 11, *infra*.

U.S. 543, 561 (1976); *Carroll* v. *United States*, 267 U.S. 132 (1925). We agree with the motion judge, however, that "[t]he word 'automobile' is not a talisman in whose presence the Fourth Amendment fades away and disappears." *Coolidge* v. *New Hampshire*, 403 U.S. 443, 461-462 (1971). There can be a legitimate expectation of privacy in the interior of a motor vehicle, however diminished. Such an expectation clearly exists in those areas which would be otherwise free from observation except by physical intrusion of some sort. See *Commonwealth* v. *Ortiz, supra* at 353. In the typical passenger vehicle, these places must include at least the trunk, the glove compartment, closed containers in the interior, and in most cases, the area under the seats. An intrusion into these places is a search. See *Commonwealth* v. *Almeida*, 373 Mass. 266, 269-270, 272 (1977). Cf. *Rakas* v. *Illinois, supra* at 148-149.[6] With the vehicle in question, a windowless van, we think the protected area includes, in the circumstances of this case, its rear interior portion as well. One reason frequently posited for the lesser expectation of privacy recognized in automobiles is the high visibility of their interiors. See *Rakas* v. *Illinois, supra* at 154 n.2 (Powell, J., concurring). The van in the case at bar was apparently designed to minimize this visibility.[7] Moreover, we have ruled that a search occurred when police officers entered a regular automobile and seized drugs from within it. *Commonwealth* v. *Ortiz, supra* at 353.[8] Thus, we conclude that Officer Brown's entry into the van, and subsequent seizure of the contraband, constituted a search and seizure within the scope of the Fourth Amendment.

[6] In *Rakas* v. *Illinois, supra* at 148-149, the Court recognized, by negative implication, that there were circumstances where at least the owner of the vehicle could have a legitimate expectation of privacy in these areas.

[7] According to uncontradicted testimony, it had windows only by the driver and passenger seats, plus the windshield. None of these would appear to offer a ready view of the rear interior from a vantage point on the street level. There is no finding that such a view might be possible.

[8] In *Commonwealth* v. *Ortiz, supra*, we utilized the expectation-of-privacy analysis to distinguish between search and nonsearch situations. *Id.* at 351-353.

As we indicated earlier, the Commonwealth contends that the intrusion was a "lawful threshold inquiry," thus apparently conceding that it was not supported by full probable cause.[9] The officer's conduct here was so markedly different from that typically seen in "threshold inquiry" cases that we cannot credit this theory. Compare *Commonwealth* v. *Ferrara*, 376 Mass. 502, 505 (1978), *Commonwealth* v. *Moynihan*, 376 Mass. 468, 470-471 (1978), and *Commonwealth* v. *Almeida, supra* at 270-272, with *Commonwealth* v. *Thibeau*, 384 Mass. 762, 763-764 (1981), and *Commonwealth* v. *Bacon, supra* at 645-646. Prior to entering the van, the officer made no attempt to question or communicate with the defendants in any way, nor does the record disclose that he was warranted in taking reasonable precautions for his safety. Compare *Commonwealth* v. *Loughlin*, 385 Mass. 60, 62-63 & n.3 (1982). If anything, the officer was "'perform[ing] a threshold search,' in other words, a search." *Commonwealth* v. *Wooden*, 13 Mass. App. Ct. 417, 421 n.1 (1982). Since the search was not supported by full probable cause, and since it was not conducted according to the standards established for a threshold inquiry, it was unlawful. See *Commonwealth* v. *Loughlin, supra* at 64-65 (Hennessey, C.J., concurring). Accordingly, the evidence seized should be suppressed.

The Commonwealth challenges the "standing" of the defendant Podgurski, the passenger, to object to the search of the vehicle.[10] The argument as to the defendant Podgurski is based on recent opinions of the United States Supreme Court which have established new principles governing

---

[9] We note further that Officer Brown testified that it was not until *after* he had seized the plastic bag that he formed a belief that it contained hashish. Cf. *Sullivan* v. *District Court of Hampshire*, 384 Mass. 736, 743-744 (1981).

[10] While contending that neither defendant had a reasonable expectation of privacy in the van, the Commonwealth does not challenge the "standing" of the defendant Collins, the owner of the van, to contest the search.

standing for Federal constitutional purposes. See *Rawlings* v. *Kentucky*, 448 U.S. 98, 105-106 (1980); *United States* v. *Salvucci*, 448 U.S. 83, 95 (1980); *Rakas* v. *Illinois, supra* at 143.[11] Prior to these decisions, Podgurski would have been automatically entitled to "standing" whenever possession was an element of the offense charged. *Jones* v. *United States*, 362 U.S. 257 (1960). Relying particularly on *Rakas* v. *Illinois, supra*, the Commonwealth argues that Podgurski failed to show, under the expectation-of-privacy analysis, that his Fourth Amendment rights were violated. Reduced to its basic form, the distinction which the Commonwealth seeks to make between the two defendants turns solely on Podgurski's lack of an ownership or possessory interest in the van.

The United States Supreme Court has emphatically rejected the notion that concepts of property law should determine one's ability to claim Fourth Amendment protec-

---

[11] In the wake of these opinions, and particularly in light of the uncertainty engendered by the abolition of the "automatic standing" rule of *Jones* v. *United States*, 362 U.S. 257 (1960), several State courts, in construing their own constitutional provisions against unreasonable searches and seizures, have opted to decide questions of standing by reference to their State Constitutions. *State* v. *Settle*, 122 N.H. 214, 218-219 (1982). *State* v. *Alston*, 88 N.J. 211, 225-230 (1981). Cf. *State* v. *Hernandez*, 410 So. 2d 1381, 1385 (La. 1982); *State* v. *Barrett*, 408 So. 2d 903, 905 & n.2 (La. 1981); *People* v. *Chernowas*, 111 Mich. App. 1, 5 (1981). In so doing, these courts have expressed serious doubts that the changes wrought by the Court will have a salutary effect on either the administration of the criminal justice system or on the ability of their citizenry to claim protection against unreasonable searches and seizures. We have referred to the new standing approach of the United States Supreme Court in *Sullivan* v. *District Court of Hampshire, supra* at 741, and *Commonwealth* v. *Simmons*, 383 Mass. 46, 54 (1981). Neither of those decisions required us to determine whether, as to a motor vehicle passenger charged with possession of contraband, we would adhere, under our State Constitution, to the portion of *Jones* giving automatic standing to such a defendant. Because the expectation-of-privacy analysis produces a just result in this case, we are not required here to decide whether to cast our lot with these other courts. We note, however, that art. 14 of the Declaration of Rights of the Massachusetts Constitution "may afford greater protections to a person in certain circumstances than those required by Federal decisions interpreting the Fourth Amendment." *Commonwealth* v. *Ortiz*, 376 Mass. 349, 358 (1978).

tion.  See *Rawlings* v. *Kentucky, supra* at 105; *United States* v. *Salvucci, supra* at 91-92; *Rakas* v. *Illinois, supra* at 143, 149-150 n.17.  Instead, ownership of the property searched is but one factor to consider in the expectation-of-privacy analysis.  In the circumstances of this case it is a factor of minimal significance.  We think that *Rakas* should not be read to deprive a "mere" passenger of standing to object to a search where, but for his lack of a property interest in the vehicle, his situation is otherwise identical to that of the owner, who has the requisite standing.  Accordingly, we affirm the order of the motion judge suppressing the evidence as to both defendants.

*Order affirmed.*