No. 82–319. MASSACHUSETTS v. PODGURSKI ET AL. Sup. Jud. Ct. Mass. Certiorari denied.

THE CHIEF JUSTICE, dissenting.

In my view, only the limitations of the Court's time preclude our granting review of this case. I would grant certiorari and summarily reverse the judgment of the Supreme Judicial Court of Massachusetts.

JUSTICE REHNQUIST, dissenting.

This case began when the manager of a clothing store in Canton Center, Mass., observed an unfamiliar blue van in the

rear parking lot, which the store owned. From his vantage point about 15 feet away, the manager saw two men in the van cutting up a suspicious looking substance. He reported his observation to the police. The Canton Police Department dispatched Officer Brown to "check '[t]wo men inside a van acting suspicious.'" 386 Mass. 385, 386, 436 N. E. 2d 150, 151 (1982). When the officer approached within about 10 feet of the van, he noticed two people in the rear of the van and that the sliding door on the passenger side stood approximately 18 inches ajar. Officer Brown then stuck his head through the door. He observed respondents Podgurski and Collins cutting hashish. Respondents were arrested and the hashish was seized.

Respondents were charged with possession of hashish. The trial court granted their motion to suppress the evidence of the hashish and the Commonwealth appealed. The Massachusetts Supreme Judicial Court affirmed. It held that Officer Brown had searched the van before viewing the hashish, and that respondents had a legitimate expectation of privacy in the van, even though the door was open. The court apparently thought that Officer Brown should have tried "to question or communicate with" respondents before putting his head inside the door. *Id.*, at 390, 436 N. E. 2d, at 153. It held that Officer Brown had not conducted a "'lawful threshold inquiry'" under *Terry* v. *Ohio*, 392 U. S. 1 (1968), because he was conducting a "search." 386 Mass., at 390, 436 N. E. 2d, at 153. It also thought that there would be no constitutional problem if Officer Brown had looked through the windshield or one of the windows, or had kept his head outside the open door. *Id.*, at 388, 436 N. E. 2d, at 152.

I am not persuaded that the Supreme Judicial Court misconstrued this Court's decisions in finding that respondents had a legitimate expectation of privacy. However, I am concerned that it took too narrow a view of our cases permitting police officers to make brief investigative stops and searches.

In *Terry, supra,* we held that "a police officer may in appropriate circumstances and in an appropriate manner approach a person for purposes of investigating possibly criminal behavior even though there is no probable cause to make an arrest." 392 U. S., at 22. *Terry* approved a search for weapons. In this case, Officer Brown merely sought to initiate a routine investigation by looking in an open door to a van. It is true that the only information available to Officer Brown was the store manager's report of suspicious activity in a van parked on store property, relayed to him by his dispatcher. However, "[t]he Fourth Amendment does not require a policeman who lacks the precise level of information necessary for probable cause to arrest to simply shrug his shoulders and allow a crime to occur or a criminal to escape." *Adams* v. *Williams,* 407 U. S. 143, 145 (1972).

Of course, absent probable cause, Officer Brown may not have been permitted to search the glove compartment, or under the seat, or a partitioned section of the interior, but that is not this case. By putting his head inside the door, he intruded only slightly into respondents' "personal security." *Terry, supra,* at 19. The intrusion would not have been materially different if he had kept his head outside the door, as the Supreme Judicial Court indicated would have been permissible.

The police officer in this case had less specific information than did the officers in *Terry* and *Adams,* but he did have a citizen's report of "suspicious activity." This seems to me to be an articulable suspicion that was sufficiently concrete to justify the minimal intrusion at issue here. Officer Brown seems to have engaged in ordinary, everyday police work. Our decisions in *Terry* and *Adams* are by no means limited to "stops"; they embrace searches as well as seizures. In *Terry,* the officer conducted a patdown search. In *Adams,* the officer both searched for and seized the pistol.

We have also held that neither probable cause nor an articulable suspicion is necessary to justify a minimal intrusion

into individual privacy. In *United States* v. *Martinez-Fuerte*, 428 U. S. 543 (1976), we held that a regular checkpoint stop near the border might be made without *any* articulated individual suspicion. The Court referred to the visual inspection that accompanied the stop as part of the "objective intrusion," and therefore may have felt it was dealing with a search as well as a seizure.

I think that the facts available to Officer Brown would "'warrant a man of reasonable caution in the belief' that the action taken was appropriate." *Terry, supra,* at 22, quoting *Beck* v. *Ohio*, 379 U. S. 89, 96 (1964). *Terry* and *Adams* permit searches on articulable suspicion in appropriate circumstances. *Martinez-Fuerte* permits minimal intrusions even without an articulable suspicion. I believe that the Court should grant certiorari to further consider the extent to which the *Terry* line of cases applies to minimal intrusions such as this search when they occur in the initial stages of police investigations.