COMMONWEALTH *vs.* ANTHONY MYERS
(and a companion case[1]).

Suffolk.  April 25, 1983. — August 24, 1983.

Present: BROWN, ROSE, & DREBEN, JJ.

*Constitutional Law,* Search and seizure.  *Search and Seizure,* Automobile, Exigent circumstances.

Where police officers had found five manila envelopes containing marihauna during a search of an apartment pursuant to a warrant, and shortly thereafter one of the officers observed a partially opened brown paper bag containing small manila envelopes on the back seat of an automobile in a parking lot behind the apartment building, there was probable cause to believe that the envelopes contained marihuana.  [556-557]

In the circumstances, police officers were not required to obtain a search warrant before entering an automobile in a parking lot behind an apartment building and seizing certain manila envelopes which they had observed lying on the back seat and which they had probable cause to believe contained marihuana.  [557-560]

COMPLAINTS received and sworn to in the West Roxbury Division of the District Court Department on March 1, 1982.

In the jury session of the Boston Municipal Court Department, a motion to suppress was heard by *Elam,* J.

*Michael J. Traft,* Assistant District Attorney, for the Commonwealth.

*Richard P. Tobin* for Anthony Myers.

DREBEN, J.  The defendants Anthony Myers and Richard Harwood were charged with violations of the controlled substances act (G. L. c. 94C).  This interlocutory appeal by the Commonwealth (Mass.R.Crim.P. 15[a][2], 378 Mass. 882 [1979]) challenges the suppression by a judge of the Boston Municipal Court, on the motion of Myers, of evi-

---

[1] Commonwealth *vs.* Richard Harwood.

dence seized without a warrant from Myers' automobile which was parked in an apartment house parking lot. The critical question is whether the Commonwealth has met its burden of proving exigent circumstances although the facts indicate that it was feasible to post a guard over the automobile until such time as a search warrant could be obtained. We conclude that in the circumstances the posting of a guard over the vehicle was not required. Accordingly, we reverse.

Although the judge did not make findings, the evidence is undisputed, and we can infer the basis of his ruling from the record. *Commonwealth* v. *Mattias,* 8 Mass. App. Ct. 786, 788 (1979). See *Commonwealth* v. *Hosey,* 368 Mass. 571, 574 n.1 (1975).

During the course of a raid of a Jamaica Plain apartment pursuant to a search warrant for drugs in that apartment, the police seized five manila envelopes containing marihuana. Four persons, including the defendants, were arrested. Shortly thereafter, Detective Fogarty, one of at least thirteen policemen taking part in the operation, left the apartment and entered a parking lot, shared by several apartment houses, in the rear of the building. He looked through the windows of a blue Pontiac parked directly behind the building and noticed in the back seat a partially opened brown paper bag containing small manila envelopes. Believing them to contain marihuana, he returned to the apartment, found a set of keys hanging on the rear door and asked police officer Thomas Matheson, who had seized the envelopes in the apartment, to join him, saying "there was marihuana in the car outside." With the keys the officers opened the car and removed the envelopes. The registration found in the glove compartment showed that the owner of the car was the defendant Anthony Myers.

The raid took place at 1:30 P.M. at a location about two and a half miles from the West Roxbury District Court, a five minute ride. The court was open that day. As put by the motion judge, "[T]he circumstances were such that there was ample time and opportunity for [the police] to get a warrant."

We note first that the Commonwealth has met its burden of showing that the parking lot at the rear of the building, shared by several apartment houses, was not an area where the defendant had a legitimate expectation of privacy. Although perhaps private in the property sense, the lot was "freely accessible to persons other than the defendant," and he did not have control over its entrances or exits. *Commonwealth* v. *Cadoret,* 388 Mass. 148, 150 (1983). See *Commonwealth* v. *Podgurski,* 386 Mass. 385, 388 (1982) (parking lot behind a store), cert. denied, 459 U.S. 1222 (1983); *Commonwealth* v. *Frazer,* 10 Mass. App. Ct. 429, 432 (1980) (alley way between buildings). See also *Commonwealth* v. *Dinnall,* 366 Mass. 165, 166-167 (1974) (common hallway in apartment building); *Sullivan* v. *District Court of Hampshire,* 384 Mass. 736, 741-742 (1981) (canteen open to hospital employees). See generally 1 LaFave, Search and Seizure § 2.3(f), at 324 (1978). Once at a spot "where he was legally entitled to be," Detective Fogarty could lawfully peer into the car through its windows.[2] *Commonwealth* v. *Podgurski,* 386 Mass. at 388. "There is no legitimate expectation of privacy . . . shielding that portion of the interior of an automobile which may be viewed from outside the vehicle by either inquisitive passersby or diligent police officers." *Texas* v. *Brown,* 460 U.S. 730, 740 (1983). *Commonwealth* v. *Hason,* 387 Mass. 169, 172-173 (1982).

While the defendant does not seriously contest the legality of the observations made by Detective Fogarty, he urges that Fogarty had no more than a hunch that the envelopes contained drugs. The evidence is to the contrary.

Detective Fogarty had been a police officer for fourteen years, had made arrests for marihuana in the past, had seized that drug in brown manila envelopes before and had participated in, or had imputed knowledge of,[3] the

---

[2] We need not determine whether the officer had in addition the right to be in the parking area because of the search warrant for the apartment.

[3] See *Commonwealth* v. *Cruz,* 373 Mass. 676, 684-685 (1977), and cases cited.

prior seizure of five manila envelopes containing marihuana in the defendant's apartment pursuant to the search warrant. The warrant itself stated that people had been seen receiving brown manila envelopes containing marihuana from occupants in the apartment. In these circumstances "the characteristic envelopes" could not be described as "inherently innocent"; it is plain that Detective Fogarty had probable cause to believe they contained marihuana. *Commonwealth* v. *Blatz*, 9 Mass. App. Ct. 603, 604, 606 (1980). As in *Texas* v. *Brown*, 460 U.S. at 743, where a tell-tale balloon was observed, the fact that Fogarty "could not see through the opaque fabric of [the envelope] is all but irrelevant: the distinctive character of the [envelope] itself spoke volumes as to its contents — particularly to the trained eye of the officer." See also *Commonwealth* v. *Ortiz*, 376 Mass. 349, 354 (1978) (probable cause to believe yellow packet contained drugs). Cf. *Price* v. *United States*, 429 A.2d 514, 517-518 (D.C. 1981).

Fogarty's observations involved no Fourth Amendment rights, see *Texas* v. *Brown*, 460 U.S. at 738 n.4, second par.; *Sullivan* v. *District Court of Hampshire*, 384 Mass. at 743 n.8, and gave him probable cause to believe that the car contained drugs. Contrast *Commonwealth* v. *Moon*, 380 Mass. 751, 760 (1980). The more difficult question is whether in the circumstances he was entitled to seize what he had seen — without obtaining a warrant.[4]

Apart from the fact that there were at least thirteen police officers participating in the raid, the Commonwealth satisfied its burden of showing exigency. The item was contraband; it was likely (particularly in view of the information contained in the search warrant) that others interested

---

[4] As in *Commonwealth* v. *Ortiz, supra* at 357 n.8, the Commonwealth argues that the seizure is valid under "the plain view" doctrine. However, "the fact that an object is visible does not automatically mean that it is in plain view in the sense that no invasion of privacy is required to seize it." *Texas* v. *Brown*, 460 U.S. at 751 n.4 (Stevens, J., concurring). We need not, in this case, decide what the Fourth Amendment requires under the "plain view" doctrine before an officer can seize a visible item from a locked car.

in drugs would recognize the "characteristic" envelopes and would willingly remove them. Moreover, the police could not have obtained a search warrant for the car prior to their observations of the manila envelopes. Contrast *Coolidge* v. *New Hampshire,* 403 U.S. 443, 460-464 (1971).

Similar facts were held in *Commonwealth* v. *Ortiz,* 376 Mass. at 355 & 358, to create the "exigent circumstances" required for a warrantless automobile search. There, four officers were on patrol, and the trial judge had found that exigent circumstances no longer existed for the seizure of certain evidence (the "Chinese marble") as the police "were in the position to either retain the vehicle where located or remove it to the district police station, keeping it under guard until such time as a search warrant could be obtained." *Id.* at 356-357. The Supreme Judicial Court reversed, saying, "postarrest exigent circumstances need not be so narrowly defined," and addressed (at 357-358) the question of guards as follows:

> "The fact that, in the abstract, less intrusive means might have been used does not, by itself, render the search unreasonable. *Cady* v. *Dombrowski,* 413 U.S. 433, 447 (1973). While the feasibility of posting guard has mitigated the exigency of the moment where a search of a dwelling was involved (*Commonwealth* v. *Hall,* 366 Mass. 790, 803 [1975]), the exigency requirement generally has not been as rigorously applied to cars. [Footnote omitted.] For example, in *Chambers* v. *Maroney,* [399 U.S. 42 (1970)], the Supreme Court upheld an automobile search conducted at the police station hours after the driver's arrest. No suggestion was made that the police first had to explore the alternative of posting guards. See also *Texas* v. *White,* 423 U.S. 67 (1975); *Cardwell* v. *Lewis,* 417 U.S. 583 (1974)."

We think that *Ortiz* posits that if contraband is involved and if other elements of sufficient urgency exist, the feasi-

bility of posting a guard does not bar the immediate warrantless search of an automobile in a public place.[5] Exigency in such cases does not require the weighing of the practicalities of guarding the vehicle while obtaining a warrant.[6]

In view of the reasoning of *Ortiz*, we think that in the instant case where there is a search of a vehicle, rather than a dwelling or other place where there is a greater interest in privacy, see *Commonwealth* v. *Huffman*, 385 Mass. 122,

---

[5] A number of reasons and combinations thereof have been relied upon to uphold such warrantless searches of cars: (1) impounding of the car or posting a guard is itself a significant intrusion, and "there is little to choose in terms of practical consequences between an immediate search without a warrant and the car's immobilization until a warrant is obtained," *Chambers* v. *Maroney*, 399 U.S. 42, 52 (1970) (car in transit); compare *United States* v. *Kessinger*, 504 F. Supp. 494, 501-502 (D. Mass. 1980); (2) a car is inherently mobile, *Carroll* v. *United States*, 267 U.S. 132, 153 (1925) (car on highway); (3) there is a "lesser expectation of privacy in a motor vehicle," *Cardwell* v. *Lewis*, 417 U.S. 583, 590 (1974) (car in public parking lot); (4) decisions are "not based on the fact that the only course available to the police was an immediate search," but rather on the "practicalities of the situations presented and a reasonable appraisal of the relatively minor protection that a contrary rule would provide for privacy interests," *United States* v. *Ross*, 456 U.S. 798, 806-807 & n.9 (1982) (car in transit). See also *Michigan* v. *Thomas*, 458 U.S. 259, 261 (1982). See generally 2 LaFave, *supra* § 7.2(a), at 519 ("warrant process is to be preserved for more critical decisions than whether to examine a car already out of the defendant's possession"), and see *id.* at 528-529 (parked cars).

[6] There is much support for this view. See, e.g., *Haefeli* v. *Chernoff*, 526 F.2d 1314, 1317-1318 (1st Cir. 1975); *United States* v. *Menke*, 468 F.2d 20, 23 (3d Cir. 1972); *United States* v. *Newbourn*, 600 F.2d 452, 453-454 (4th Cir. 1979); *United States* v. *Bozada*, 473 F.2d 389, 391 (8th Cir.), cert. denied, 411 U.S. 969 (1973); *State* v. *Rapp*, 389 So.2d 1100, 1102 (Fla. Dist. Ct. App. 1980); *Redd* v. *State*, 240 Ga. 753, 754 (1978); *State* v. *Elliott*, 61 Hawaii 492, 498 (1980); *People* v. *Peter*, 55 Ill.2d 443, 456 (1973), cert. denied, 417 U.S. 920 (1974); *State* v. *Cullor*, 315 N.W.2d 808, 813-814 (Iowa 1982); *State* v. *Lail*, 41 N.C. App. 178, 181 (1979). Cf. *United States* v. *Spetz*, 705 F.2d 1155, 1173 (9th Cir. 1983); 2 LaFave, *supra* § 7.2(a), at 529. But see *United States* v. *Fogelman*, 586 F.2d 337, 342 (5th Cir. 1978) (numerous officers); *State* v. *Massey*, 310 So.2d 557, 560 (La. 1975) (ten officers).

124-125 (1982), the Commonwealth has met its burden of showing probable cause and exigent circumstances. Accordingly, we reverse the order suppressing the manila envelopes taken from the car in the warrantless search.

*So ordered.*