COMMONWEALTH vs. RICHARD B. WUNDER.

Essex. March 5, 1990. - July 11, 1990.

Present: LIACOS, C.J., WILKINS, ABRAMS, LYNCH, & GREANEY, JJ.

*Constitutional Law*, Search and seizure, Probable cause. *Search and Seizure*, Automobile, Container, Exigent circumstances, Probable cause. *Probable Cause.*

Where police officers had probable cause and exigent circumstances to justify a warrantless stop and search of a motor vehicle for controlled substances, no further probable cause or exigent circumstances were needed, under either the Fourth Amendment to the United States Constitution [912-915] or art. 14 of the Massachusetts Declaration of Rights [915], to justify a search of any closed container in the vehicle capable of holding the contraband.

INDICTMENT found and returned in the Superior Court Department on April 16, 1986.

A pretrial motion to suppress evidence was heard by *John T. Ronan*, J., and the case was heard by *Charles M. Grabau*, J.

The Supreme Judicial Court on its own initiative transferred the case from the Appeals Court.

*John C. McBride* for the defendant.

*Dyanne J. Klein*, Assistant District Attorney (*William J. Meade*, Assistant District Attorney, with her) for the Commonwealth.

LYNCH, J. After a jury-waived trial in the Superior Court, the defendant, Richard B. Wunder, was found guilty of trafficking in more than 100 grams of cocaine.[1] He timely appealed from this conviction and from the denial of his motion

_____

[1]Upon the defendant's motion, the trial judge stayed execution of sentence pending appeal.

to suppress the approximately 980 grams of cocaine and a triple-beam scale discovered by State police troopers in the February 24, 1986, warrantless search of a gym bag and cooler found in the passenger compartment of the defendant's Volkswagen van. We transferred the case here on our own motion and now affirm.

The facts, as found by the motion judge, are not in dispute. On February 24, 1986, at 4:45 P.M., State police trooper John Walsh, assigned to the Essex County Drug Task Force, received a call at his office in Lawrence from an informant whom he knew, and with whom he had been dealing for approximately one year. On some six prior occasions, the informant had given Walsh details concerning drug transactions which were under investigation by other law enforcement units in Middlesex County. While the informant's tips had been verified as accurately naming individuals suspected of trafficking in drugs, they had not at that point in time led to any arrests and convictions.

The informant reported to Walsh that a Richard Wunder, then living in Winchester, had told the informant that he had cocaine, that he was "anxious" to sell immediately, and that he planned to make a few transactions that afternoon, after which he would have about three-fourths of a kilogram left over. According to the informant, Wunder had then stated that he was going to sell that remaining cocaine at 6 P.M. in the Grossman's parking lot on Route 114 in Danvers. The informant described Wunder as a clean-shaven, white male in his early thirties with brown hair and blue eyes, and also told Walsh that Wunder would be driving to the parking lot an older-model orange Volkswagen van with a white top.

Walsh immediately talked with Sergeant Paul Regan, who supervised the Drug Task Force in Lawrence, and apprised him of the tip concerning an imminent drug transaction. The two troopers also notified Danvers police and told them to send some officers to meet them at 5:40 P.M. at the Dunkin' Donuts shop just south of Grossman's on Route 114 to discuss the surveillance operation. Walsh and Regan then left Lawrence to go to Danvers, some fifteen miles away. By 6

P.M., the two troopers and a number of Danvers police officers were positioned at various points in the Grossman's parking lot.

At exactly 6 P.M. an old orange Volkswagen van with a white top, apparently occupied solely by its driver, drove into the Grossman's parking lot. The van inched slowly in a 180-degree arc of the parking lot, passing a number of vacant parking spaces. The driver repeatedly looked first to one side and then the other as he headed toward the parking lot's exit. The law enforcement officials observed that he was a clean-shaven white male of approximately the age described by the informant. Worried that the driver was about to pull out on Route 114 and disappear, Trooper Walsh hailed him and brought him to a stop right inside the exit. When asked for his identity and driver's license, the driver stated he was Richard Wunder, as indicated on an expired Florida driver's license he produced, and that he now lived in Winchester.

As soon as Walsh's colleague Regan heard that the driver was indeed Wunder, Regan entered the van to search. He saw first a partially-zippered canvas gym bag in the front seat, wedged between the stick shift and the front passenger's seat, with a blue towel sticking out. Regan opened the bag and found wrapped inside the towel a triple-beam scale and a brown bag containing several packets of cocaine. As he checked further in the van, Regan discovered a closed cooler on the floor behind the driver's seat. Inside the cooler he found another brown paper bag containing more plastic packets of cocaine. When Regan told Walsh what he had found, the defendant was formally placed under arrest.

The defendant concedes that, based on the informant's tip and the police corroboration of its detail, the officers had probable cause to arrest him and to search his van. He has also conceded, as he did at the motion hearing below, that the hour and one-half gap between the tip and the predicted appearance of the defendant with the contraband gave the officers exigent circumstances to search his vehicle without a warrant. The defendant argues only that (1) there was neither probable cause nor exigent circumstances for the

search of the closed containers within his van, and (2) assuming that probable cause and exigent circumstances existed justifying the warrantless search of his van and its containers under the Fourth Amendment to the United States Constitution, art. 14 of the Massachusetts Declaration of Rights requires the officers to have a warrant before they could open the closed containers found during the search, and thereby mandates the suppression of the evidence found therein.

1. *Probable cause and exigent circumstances.* The defendant asserts that, because the informant said nothing about a canvas gym bag or a cooler — or any particular container at all — as the locus of the cocaine, the officers had no right to conduct a warrantless search of the closed containers. Similarly, the defendant argues that the exigent circumstances justifying the search of the van, arising from the brief interval of time between the tip and the anticipated drug transaction, along with the inherent mobility of the van in transit, do not apply to the closed containers inside the van. We disagree.

The defendant's analysis of the scope of probable cause and exigent circumstances in cases such as this one, involving warrantless searches of motor vehicles under the "automobile exception" to the warrant requirement of the Fourth Amendment and art. 14, is fundamentally flawed. Probable cause to search the defendant's van for cocaine existed when the police possessed sufficient information to justify a reasonable person in believing that the defendant, found behind the wheel of that van, had committed or was committing the crime of trafficking in cocaine, and the circumstances were such that cocaine was probably present in that van. See *Carroll* v. *United States,* 267 U.S. 132, 162 (1925); *Commonwealth* v. *Ortiz,* 376 Mass. 349, 354 (1978); *Commonwealth* v. *Avery,* 365 Mass. 59, 64 (1974). The defendant concedes such probable cause existed. Under the automobile exception established by *Carroll,* and followed under art. 14 in *Ortiz* and *Commonwealth* v. *Cast, ante* 901, (1990), once there is probable cause to believe a motor vehicle contains contra-

band, and the situation is exigent so as to render obtaining a warrant impracticable, as the defendant also concedes to be the case here, then law enforcement officers were entitled immediately to stop and search his van without a warrant. *Carroll* v. *United States, supra* at 149.

The fact that a lawful warrantless search of an automobile turns up closed containers in which the object of the search may be hidden "does not in itself either expand or contract the well-established" automobile exception. *United States* v. *Johns*, 469 U.S. 478, 486 (1985). " 'The scope of a warrantless search of an automobile thus is not defined by the nature of the container in which the contraband is secreted[, but rather] . . . by the object of the search and the places in which there is probable cause to believe that it may be found.' " *Commonwealth* v. *Cast, supra* at 906, quoting *United States* v. *Ross*, 456 U.S. 798, 824 (1982).

Therefore, officers are not required to satisfy a second and independent set of probable cause and exigent circumstances demands — apart from those met regarding the defendant and his van, which justified the warrantless search — specifically focusing on any closed containers they come across during such a search under the automobile exception. Rather, "[i]f probable cause justifies the search of a lawfully stopped vehicle, it justifies the search of every part of the vehicle *and its contents* that may conceal the object of the search" (emphasis added). *United States* v. *Ross, supra* at 825. See *Commonwealth* v. *Cast, supra* at 906-908; *Commonwealth* v. *King*, 389 Mass. 233, 247 (1983); *Commonwealth* v. *Jiminez*, 22 Mass. App. Ct. 286, 291 (1986). Given the probable cause to believe that the van harbored cocaine, "there is no plausible argument that the object of the search could not have been concealed in the packages." *United States* v. *Johns, supra* at 487.

This is not a case where law enforcement officers had probable cause to suspect that contraband was in a particular container, that fortuitously ended up in a motor vehicle that could not be searched without a warrant. *United States* v. *Ross, supra* at 814, 817. *Arkansas* v. *Sanders*, 442 U.S. 753

(1979). *United States* v. *Chadwick*, 433 U.S. 1 (1977). See, e.g., *United States* v. *Klein*, 860 F.2d 1489, 1494 (9th Cir. 1988) (upholding warrantless search of package, concealing kilogram bricks of cocaine, found in defendant's car, observing that "[h]ow narcotics were packaged, in what container, or whether narcotics were in any 'container' was unknown" by law enforcement agents at the time of defendant's arrest, giving them a "generalized belief that the car contained contraband" which included the package the agents were entitled to open without a warrant under the automobile exception); *United States* v. *Reyes*, 792 F.2d 536, 541 (5th Cir.), cert. denied, 479 U.S. 855 (1986) (upholding warrantless search of gym bag, filled with cocaine, found in defendant's car, stating that "although the government agents had probable cause to believe narcotics were in the Blazer, they had no reason to know the exact location . . . [t]herefore, probable cause extended to the entire vehicle and its contents, including the . . . nylon bag"); *State* v. *Jaso*, 231 Kan. 614, 622 (1982) (upholding warrantless search of suitcase containing Quaaludes found in defendant's car, noting that police had probable cause to believe defendant's Chevrolet might contain contraband, "searching officer had no knowledge as to any specific container," and thus probable cause extended to every part of Chevrolet that might contain the Quaaludes, including suitcase). Therefore, the automobile exception to the warrant requirement is applicable to this search.

Just as any probable cause the troopers had to search Wunder's Volkswagen van embraced containers capable of holding cocaine, "the exigencies that allow the police to search the entire automobile without a warrant support the warrantless search of every container found therein." *United States* v. *Ross*, *supra* at 816, quoting *Robbins* v. *California*, 453 U.S. 420, 435 (Powell, J., concurring). While the United States Supreme Court considered in *Ross* the same suggestion made by the defendant here — that while every part of the vehicle could be searched under the automobile exception, any closed container discovered, since not inherently mobile, could be removed and taken to a magistrate for his

or her assessment of probable cause to open it — it rejected
the suggestion as an impractical solution that would unduly
burden law enforcement efforts while "actually ex-
acerbat[ing] the intrusion on privacy interests." *United
States* v. *Ross, supra* at 821 n.28.

Thus, we hold that there was no need for the Common-
wealth to establish probable cause or exigent circumstances
to search for cocaine in the gym bag and cooler they found in
Wunder's van. The probable cause and exigent circum-
stances that permitted them to search his van for evidence of
that cocaine extended to the closed containers found therein.

2. *Scope of automobile search under art. 14.* The defend-
ant's final argument is that, if the closed containers did fall
within the scope of the lawful warrantless search under the
automobile exception, they did so only under the Fourth
Amendment. Article 14 of the Massachusetts Declaration of
Rights, he asserts, would require the State troopers to have
obtained a warrant for the gym bag and cooler found in his
van before opening them.

In *Commonwealth* v. *Cast, supra,* decided today, we con-
clude otherwise. Under art. 14, as under the Fourth Amend-
ment, law enforcement officers facing exigent circumstances,
who have probable cause to believe a motor vehicle contains
contraband, may search, without a warrant, any part of that
motor vehicle and any containers therein that might hold the
contraband sought.[2]

The order of the motion judge denying the defendant's mo-
tion to suppress and the judgment of conviction are affirmed.

*So ordered.*

---

[2]We note that a different question arises under art. 14 upon the war-
rantless opening of a closed, locked or unlocked, container found during an
inventory search of a motor vehicle.